### E. E. RICE v. C. E. ANGELL.
#### No. 2688.

1.  **Dissolution of Partnership.**—In absence of fraud and where no time for the duration of a partnership is agreed upon, a member may dissolve at his pleasure.

2.  **Good Will** is defined as "the probability that the old customers will resort to the old place." 17 Ves., 346, Crutwell v. Lye.

3.  **Agency for Insurance Companies.**—Where two parties carry on such agency, using their names in the style of the firm, the agency having no particular locality, it would seem that upon a dissolution there would be nothing of good will left; each party would have the right to continue in business and compete for the business of the dissolved firm.

4.  **Action for Value of Business.**—Held that no action would lie upon a legal dissolution of a partnership for a share in the value of the business, by one member against another, apart from a partition of assets.

APPEAL from Galveston.    Tried below before Hon. W. H. Stewart. The opinion states the case.

*Hume & Kleberg,* for appellant.—As against a general demurrer every reasonable intendment arising upon the petition must be indulged in favor of its sufficiency.    Tested by this rule the petition in this case taken as a whole states a good and legal cause of action.    Supreme Court Rule No. 17; Whetstone v. Coffey, 48 Texas, 269; Railway Co. v. Montier, 61 Texas, 122.

*Gresham, Jones & Spencer,* for appellee.— 1.    A partnership entered into for no specified time may be terminated by either partner on a moment's notice.    Story on Part., sec. 269; 1 Lindl. on Part., 220.

2.    The amount paid by Rice to Angell was a premium, or a sum of money for the latter's own private benefit, as a consideration for admitting Rice into partnership with him in a business already established; and there being no time specified for the continuance of the partnership, and no agreement for a return or an apportionment of that premium in the event of an unexpected termination of the partnership, Angell had a right, after the lapse of such time as to exclude any presumption of fraud

on his part in entering into the partnership, to dissolve the same; and in the absence of partnership property or assets it can not be held that Rice has not got all for which he stipulated. 1 Lindl. on Part., 71, 73, 74.

3. There was no good will attached to the said business in the sense of good will as property or a property right. The only good will incidental thereto was the personal influence or popularity of the individual members composing the firm, which could not be transferred, but which followed each partner on the dissolution of the partnership; and in the absence of a stipulation to the contrary either was at liberty to carry on the same business on his own account in the same locality.

4. The partnership is not shown to have been possessed of any property or property right in or claim upon its patrons or the insurance companies it represented as agents, such as could be the subject of barter and sale or of assignment and transfer. The contracts of agency between the firm and the insurance companies it represented, whatever may have been their terms, were necessarily personal trusts and confidences reposed in the firm, and a dissolution of the partnership *ipso facto* abrogated those contracts. Neither partner could transfer or assign those contracts or any right thereunder either to his copartner or to any other persons without the consent of the companies.

GAINES, ASSOCIATE JUSTICE.—A demurrer was sustained to the petition in the court below, and plaintiff having declined to amend, his suit was dismissed. He appeals to this court.

The case being novel we insert the substance of the allegations in the petition as taken from appellant's brief:

"The petition alleged that defendant was indebted to plaintiff in the sum of $5000, for that on November 21, 1884, plaintiff and defendant entered into a copartnership in the business of fire and marine insurance agents under the firm name of Angell & Rice, for so long a time as they should mutually agree to continue the same; that at the time of the formation of said partnership and long prior thereto plaintiff and defendant were, each for his own account, engaged in the business of fire and marine insurance agents, and that it was agreed by them in entering into said partnership that plaintiff should pay to the defendant for a one-half interest in the general insurance agency of said defendant, which was then being conducted in the city of Galveston under the name of C. E. Angell & Co., the sum of $2650, and in addition to such payment bring into the new firm as much of his former business as possible, in consideration whereof the said plaintiff was to own in his own right one-half of said entire business and was to receive one-half of all the profits, earnings, and emoluments which might arise from or come out of said copartnership business.

"That plaintiff accordingly paid to said defendant said sum of $2650 for a one-half interest in the general insurance business of said defendant and brought into said new firm all of his former business, and in every way fully complied with said agreement of partnership, and he then and there became the partner of said defendant, and the full and absolute owner of one-half of the general insurance agency business formerly owned by said defendant alone, and of the good will of said business; that at said time a one-half interest in said business of said defendant was fully worth in the market of Galveston the said sum of $2650.

"That said partnership was conducted and carried on by and between plaintiff and defendant from said date last aforesaid until about the 31st of December, 1886, when defendant declined and refused to further continue the same; that at the time when plaintiff purchased a one-half interest in the said business of defendant with the good will thereof, and at the time of the formation of said copartnership, said defendant in his said business represented the following insurance companies and held their agencies for the city of Galveston, to-wit, the Liverpool, London and Globe Insurance Company, the Pennsylvania Fire Insurance Company of Philadelphia, the Universal Insurance Company of England, the Union Insurance Company, Philadelphia, and the Hibernia Fire Insurance Company of New Orleans; that after said partnership was formed it acquired the general agency of said Hibernia Fire Insurance Company for the entire State of Texas, and also the local agencies of the Sea Insurance Company and the Phœnix Insurance Company of Brooklyn, and retained in its business all of said local agencies held by said defendant in his former business. That the agencies of all of said insurance companies were very valuable in the business of a general insurance agency and greatly increase the value of such a business, and that the same were worth in the market of Galveston at the time of the dissolution of said partnership between plaintiff and defendant the sum of $10,000. That prior to said date of dissolution large sums of money out of the assets of said firm were expended in building up and extending said partnership business by advertising and establishing branch agencies in the State of Texas, and that plaintiff had devoted his entire time and energy and business experience in procuring and did procure for the same a large and lucrative custom, and that the said business at the said 31st of December, 1886, was of the value of $10,000, and was then growing and steadily increasing in value, but that said defendant declined and refused to further continue said copartnership and insisted upon a dissolution thereof, and in view of this fact plaintiff agreed to a dissolution and offered to pay defendant $5000 for said defendant's interest therein or to take said sum for his (plaintiff's) interest in said firm, both of which propositions defendant declined, but then and there wrongfully and forcibly and without regard to plaintiff's rights took possession of all the business of

said partnership and of its connections and good will and entirely ex-
cluded plaintiff therefrom, and declined and still declines to pay this
plaintiff anything whatever for his share in said business.    Plaintiff fur-
ther says that all insurance agencies are the subject of barter and sale
in the markets of the country as much as any other merchantable com-
modity, and that the business of conducting a general insurance agency
in Galveston is one of great profit, and that the agency conducted by
said firm of Angell & Rice, of which plaintiff owned one-half as his prop-
erty, was of the value of $10,000 in the market of Galveston and would
have readily realized that sum."

We see from the statement that the plaintiff paid the defendant a
sum of money to be admitted into partnership with him in the business
of an insurance agency, and that no time was fixed by the agreement
during which the partnership should continue.    The business of the firm
was entered upon and carried on in pursuance of the terms of the con-
tract for more than two years, and the partnership was then dissolved by
the withdrawal of the defendant.    The plaintiff acquiesced in the disso-
lution, but it does not appear there was any agreement for the transfer
by one to the other of any property or business.    The suit is not for the
division of any tangible assets, nor is it averred that there was any such
property on hand at the time of the dissolution.    In the absence of fraud
it can not be questioned that the defendant had the right to dissolve the
partnership at his pleasure.    There are no circumstances alleged which
would have made it fraudulent for the defendant to demand a dissolu-
tion, and his right to do so seems not to be denied.    There was therefore
a lawful dissolution, and so far as the petition discloses all the rights of
the parties settled and their respective claims adjusted except as to the
good will of the partnership business.    What is the good will of a busi-
ness and in what did it consist in the case of the partnership under con-
sideration?    The term is variously defined.    In Crutwell v. Lye, 17 Vesey,
346, Lord Eldon defined it as "the probability that the old customers will
resort to the old place."    This has been said to be the best definition.
Cassiday v. Metcalf, 1 Mo., 601.

The definition of Judge Story is more comprehensive:    "Good will is
the advantage or benefit which is acquired by an establishment beyond
the mere value of the capital stock or funds or property employed therein
in consequence of the general public patronage or encouragement which
it receives from constant or habitual customers on account of its local
position or common celebrity or reputation for skill or influence or punct-
uality, or from accidental circumstances or necessities, or even from
ancient partialities or prejudices."    This definition has been frequently
quoted with approval.    Smith v. Gibb, 44 N. H., 343; Boon v. Moss, 70
N. Y., 473; Morgan v. Perhamus, 36 Ohio St., 522; Bell v. Ellis, 33
Cal., 624; Howe v. Searing, 19 How. Pr., 26.    We can understand very

well how a good will may become a thing of value to a mercantile establishment.   As attending a fixed place of business and a name indicating the continuousness at least in part of the same proprietorship and management it may draw to it a custom which is in itself a source of profit. This may be the subject of sale.   Upon the dissolution of a partnership by death some authorities hold that the survivors, if they continue the business in their own behalf, may be required to account to the representatives of the deceased partner for its value.   Upon this point, however, there is a conflict.   In case of the dissolution of a trading partnership, where one partner secures the right to continue the business at the old stand, the probability of the resort of the old customers to the old place might be deemed a valuable right.

But in the present case what is there left to either partner to which the good will can attach?   It is not alleged that the business had been carried on in any particular house or office, nor does it seem to us that the business was of such a nature that its patronage would be affected by the particular spot in which it was transacted.

If the business had been conducted under an assumed name wholly distinct from the name of either partner, such, for example, as the Galveston Insurance Agency, it might be held that the probability that the patrons of the partnership would continue to do business with any person or firm using that name constituted a valuable right and would be the subject of legal disposition upon a dissolution of the firm.   But in this case the names of the partners constituted the name of the firm, and neither member had the right to demand that a business should be continued in the partnership name.   Such a demand is inconsistent with the undoubted privilege of either to continue the same business in his own name.   It appears then that upon the dissolution of the partnership between the plaintiff and the defendant there was nothing left which would probably draw to it the custom of the firm.   The agencies which the partnership had secured were determinable at the will of the principals, and there could be no property in them.   They actually ceased upon a dissolution of the firm, and each partner was left free to continue business in his own name and to procure for himself alone the employment of such of the insurance companies formerly represented by the firm as might desire his services.

The success of either in controlling the former custom of the firm depended upon his own personal capacity for attracting and holding patronage, and not upon anything he had received upon the dissolution more than was received by the other.   Each had the same opportunities as the other for competing for their old business, and if one had any advantage over the other in that competition it could only have been by reason of his personal qualifications, in which the other partner by reason of the contract of partnership certainly acquired no right which con

tinued after the relation of partnership had ceased to exist. It appears, therefore, that upon the dissolution each partner by its legal effect took with him his chance of securing the patronage of the old firm, without any advantage over the other except such as was purely personal to himself.

We do not see that the broad allegation that the good will was worth $10,000 helps plaintiff's case. This means, we presume, that if the exclusive right to carry on the old business were secured to either party or to some third person it would be worth to the person so continuing the business the sum named. But in the absence of a special agreement the law secures this right to neither partner. On the contrary, each member of the firm was entitled to pursue the same business in his own name and to compete for the former custom of the partnership. Nor does the offer of the plaintiff to pay the defendant $5000 for his interest in the good will affect the question. The plaintiff was not entitled to demand that the defendant should transfer to him his privilege of competing for the old business upon payment of its value, nor can he thrust his own right upon the defendant and make him pay for it.

The alleged fact that the plaintiff paid a sum of money to defendant as a consideration for entering into the partnership does not alter the rights of the parties so far as this question is concerned. The probability of his being able upon dissolution to retain or secure a fair share of the patronage of the firm is a question the plaintiff should have considered before he paid his money.

We have found no case in point, but the principles announced in Austin v. Boys, 2 De Gex and Jones, 626, are in accordance with the views expressed in this opinion. See also Smith v. Gibbs, 44 N. H., 335. Austin v. Boys was a case of a partnership between solicitors, but we see no difference in principle between such a partnership and that of insurance agents.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Delivered March 19, 1889.