## ROTAN v. UNITED STATES.

### ROTAN et al. v. UNITED STATES.

#### Nos. 1108, 1109.

District Court, S. D. Texas, Houston Division.
July 31, 1930.

Selden Leavell, of Houston, Tex., for plaintiffs.

H. M. Holden, U. S. Dist. Atty., of Houston, Tex.

HUTCHESON, District Judge.

These suits are brought to recover sums of money paid by the plaintiffs as they allege, under protest and duress, for the years 1920–1921, 1923, and 1924 upon their separate income tax returns, after a deduction of $7,500, claimed one-half by each, had been disallowed.

Plaintiffs allege that for each of the years in suit claim was made for a refund, and that, except for the year 1923, these claims have been disallowed, while the claim for that year has been on file with the Commissioner of Internal Revenue, and not acted upon, for more than six months.

Plaintiffs' deduction claims are based upon the fact that taxpayer George V. Rotan did in 1919 enter into a five-year contract of partnership, beginning January 1, 1920, and ending December 31, 1924, with Hugo V. Neuhaus, by the terms of which, in addition to paying into the partnership a sum as contribution to its capital, Rotan had paid to Neuhaus personally the sum of $37,500 for the privilege, as plaintiff claims, of entering into partnership with him for the five-year period.

That this payment constituted a capital outlay having a fixed, definite, and determinable life, which began January 1, 1920, and ended December 31, 1924, and that he was therefore entitled in his income tax return to take credit for each year, as an allowable deduction, for one-fifth of the total sum so paid.

The Commissioner of Internal Revenue denied the claim on the ground that the payment was for the purchase of an interest in the good will of the business, and was not for the purchase of the mere right to do business for five years.

The suits at bar were tried upon a stipulation, which, in addition to setting out the contracts fully, the making of the annual returns, the claims for deduction thereon and their disallowances, recites that: "The business conducted by Neuhaus & Company, a partnership, is a stock and bond brokerage business; that is to say, Neuhaus & Company buy stocks and bonds, both listed and unlisted, for the account of their customers, and as is customary in such character of business, frequently make loans to their customers for the purpose of carrying their purchases, and do all other things usual and customary in this character of business. The character of the business conducted by the partnership composed of Hugo V. Neuhaus and George V. Rotan is the same as that of the business conducted by Neuhaus for many years prior to January 1, 1920, individually under the name of Neuhaus & Co."

The stipulation further provides: "At the time the contracts forming the partnership for the five year period were entered into, it was understood and agreed by and between Hugo V. Neuhaus and George V. Rotan that in the event of a dissolution of the partnership during the five year period or at its conclusion, Rotan should not be entitled to the repayment of any part of the payment of $37,500.00 referred to in the contract as a payment for an interest in the good will of said business of Neuhaus & Company, except in the cases specially provided for therein," and "that upon the completion of the five year period at December 31, 1924, the business of Neuhaus & Company was continued under that name by a partnership at will composed of Hugo V. Neuhaus and George V. Rotan which is still in existence."

While there is some point made in the government's brief of the fact that plaintiff has shifted the basis of his claim for the deduction from the ground first asserted by him as originally filed, the real issue between the parties arises out of the respective contentions on the part of the government that plaintiff by the payment of $37,500 made a permanent investment of capital and acquired thereby an interest in the good will of Neuhaus & Co., and on the part of the plaintiff that, though the partnership contract referred to the matter as purchase and sale of good will, no such result in fact occurred, but that there was a mere purchase of a right to do business in conjunction with Neuhaus for a fixed and determinable time, and that it was such a capital outlay as that plaintiff was entitled to take credit in his income tax return by the deduction annually of an aliquot part of it as an expense or cost of doing business.

Plaintiff frankly concedes that, if the transaction resulted as the contracts in terms describe it, as a purchase of good will, plaintiff must fail.

While much of his brief is devoted to the citation and discussion of rulings and court decisions to the effect that allowance should be made to the taxpayer annually as cost of doing business in cases where a substantial

outlay has been made in form an acquisition of property, but in fact an acquisition merely of the right to do business under ·certain terms, or in certain places, he summarizes these decisions, and their effect upon his case and its disposition, as follows:

"The authorities cited and summarized clearly establish the proposition laid down. It follows therefore that Mr. Rotan is entitled to the deduction claimed by him, if the right or privilege acquired by reason of the payment of $37,500.00 to Mr. Neuhaus had a fixed, definite and determinable life.

"On the other hand, if by this payment Mr. Rotan acquired an interest in the good will, then as such interest so acquired did not have a fixed, definite and determinable life Mr. Rotan would not be entitled to the deduction claimed. It is for this reason that it is necessary to determine whether or not Mr. Rotan acquired an interest in the good will."

Plaintiff then proceeds to cite and discuss cases dealing with the effect of the dissolution of partnerships and the devolution of· businesses upon good will, and the general characteristics and incidents of ·good will, both before and after dissolution and devolution, reaching the conclusion that, although the parties here in their contracts have declared that the one has sold and the other has bought good will, they did not in fact do any such thing, either because, as claimed by plaintiff under the authority of Rice v. Angell, 73 Tex. 350, 11 S. W. 338, 339, 3 L. R. A. 769; Kremelberg v. Thompson, 87 N. J. Eq. 655, 103 A. 523, there was in fact no good will to sell, and because, if there was good will which could have been made the subject of sale, the parties by the terms and conditions of their contracts here plainly declared that, though they used the term good will, there was in fact no sale of it, but, as it were, a lease or sale to Rotan for a period of five years of the right to do business in conjunction with Neuhaus.

It seems to me that plaintiff has reached his conclusion not only through a failure to properly apprehend and apply to the facts of this case the authorities which treat of good will, but by a disregard of that consideration which is paramount here, the intention of the parties to the transaction in question, which intention is not only plainly shown in express words in the contracts themselves, but is derivable from the acts and conduct of the parties thereunder. This of course, plaintiff cannot do.[1]

In the case of Scott v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 472, 473, it was sought, for the purposes of a claimed deduction, to construe a transaction entered into by the parties as constituting a different thing from that which they themselves had declared it to be. The court said: "While we may look to the entire transaction to determine its nature, we can see no reason in this case to give it an interpretation in any way different from that which the parties themselves have given it, as manifested by their agreement. They provide for absolute conveyance to the sons, they divorce the annual payments from partnership profits, and specify an annuity as a consideration moving from the petitioner and his brothers. We can see no reason why, for ·the purposes of this tax, we should infer a status different from that which they plainly and intentionally assumed."

Turning first to the facts, the stipulation shows the character of the business conducted by the partnership· formed in 1919 to be the same as that of the business conducted by Neuhaus himself for many years prior to that time, *under the name of Neuhaus & Co.*, and that when the parties formed a contract of partnership they did so. upon the assumption and understanding that there was a valuable good will attached to the name of Neuhaus & C'o., and that it was not only capable of being valued in the business negotiations which resulted in the partnership, but was valued.

The articles of partnership are in the form of an original and a supplemental contract. In the original contract $30,000 was paid on account of the good will, in the supplemental contract, $7,500, and in that part of the original contract which dealt with the set-up of the new partnership, after providing that Neuhaus should pay into the partnership $100,000 consisting of the present busi-

---

[1] Hilton v. Hilton, 89 N. J. Eq. 182, 104 A. 375, 376, L. R. A. 1918F,. 1174, 1177, in which it is said: "The parties, when they dissolved partnership, put their agreement in writing, and that writing measures their rights and obligations." In re Brown, 242 N. Y. 1, 150 N. E. 581, 582, 44 A. L. R. 510. "Good will, when it exists, * * * is presumptively an asset to be accounted for like any other. * * * The course of dealing, however, can stamp it with a different quality. Partners may contract that good will, though it exists, shall not 'be considered as property or as an asset of the copartnership.' * * * The contract may 'be expressly made,' or it may 'arise by implication from other contracts and the acts and conduct of the parties.'" Douthart v. Logan, 190 Ill.· 243, 60 N. E. 507.

ness equipment of Neuhaus & Co. at its fair valuation and an additional amount in cash, it was stated: "The said George V. Rotan shall pay into said business Forty Thousand Dollars ($40,000.00) in actual cash at the same time and shall pay to Hugo V. Neuhaus individually the sum of Thirty Thousand ($30,000.00) Dollars 'for a two sevenths (2/7) interest in the good will of said business of Neuhaus & Company, and upon such payments being made the said Hugo V. Neuhaus shall own and hold a five sevenths (5/7) interest in said business, and the said George V. Rotan shall own and hold a two sevenths (2/7) interest in said business."

In the supplemental contract which evidences the purchase of a one-fourteenth interest by Rotan in the firm of Neuhaus & Co., it is stated: "In consideration of the sum of $17,500.00 cash in hand paid to Hugo V. Neuhaus, Hugo V. Neuhaus has sold to George V. Rotan an additional interest of one fourteenth (1/14) in the firm of Neuhaus & Company," and in paragraph 4: "The sum of $17,500.00 so paid comprises $10,000.00 for the book value of one fourteenth (1/14) interest in said business, and $7,500.00 as a bonus or consideration paid by said George V. Rotan to said Hugo V. Neuhaus for said 1/14th interest in the good will of said partnership."

In that part of the contract which provides for an accounting in the event of death or incapacity, it is declared that Neuhaus is given the right and assumes the obligation to take over the interest of Rotan by paying the book value of his interest in the partnership, and, in addition, it provided for the repayment of the bonus or consideration "for the interest of George V. Rotan in the good will of said partnership" of the sum paid by Rotan therefor, said sum to be diminished each year by $7,500, while, as the stipulation shows, no refund of this payment was to be made in the event of dissolution during or at the end of the partnership period, but an accounting was to be had on the basis of the legal rights of the parties, through arbitration.

It further appears from the stipulation that no such accounting was ever demanded or had, but that the parties, having established themselves as partners under the agreement above, have continued to occupy that relation ever since, and no accounting has ever been had or attempted as to the value of the assets acquired by Rotan, the purchase of the good will in 1919, because he still has it and in the continuing relation is enjoying its fruits.

Turning now to the law of the case, there seems to be no question under the authorities that the good will of a business may be, and usually is, a valuable asset and the subject of bargain and sale. Gordon v. Knott, 199 Mass. 173, 85 N. E. 184, 19 L. R. A. (N. S.) 762; Reardon Laundry Co. v. Reardon, 97 N. J. Eq. 356, 128 A. 482; In re Brown, 242 N. Y. 1, 150 N. E. 581, 44 A. L. R. 510 and Note.

Nor can plaintiffs derive any comfort from the Texas case of Rice v. Angell, on which he seems to stand, for there was merely a case of a controversy between partners upon the dissolution of the firm which they had begun and carried on without any agreement between them, either at the time of its formation or dissolution, as to the value of its good will. There the court laid down the principles which, while establishing that there was no good will to be dealt with in the case before it, make it very clear that in this case there is not only such good will as might by strained construction be the subject of purchase and sale, but such good will as comes within the very strictest terms of the authorities.

While there the names of the partners constituted the name of the firm, and there was nothing to which good will could attach, here the stipulation declares that the business had been conducted by Neuhaus in the name of Neuhaus & Co. for many years, and that five-fourteenths interest in the good will of that business was valued by Neuhaus and Rotan at $37,500.

This was not a future good will, but an already acquired and definite good will which had attached to the name an assumed one under the stipulation, since there was no company, but merely Neuhaus doing business under that name.

In the Rice Case Judge Gaines, after giving several approved definitions of good will, said: "As attending a fixed place of business and a name indicating the continuance, at least in part, of the same proprietorship and management, it may draw to it a custom which is, in itself, a source of profit. This may be the subject of sale."

Then turning from the general discussion of the incidents of good will in cases where it exists, to a differentiation of the case before the court from those cases, the court said: "But, in the present case, what is there left to either partner to which the good-will can attach? * * * If the business had been conducted under an assumed name wholly distinct from the name of ei-

236

ther partner, * * * it might be held that the probability that the patrons of the partnership would continue to do business with any person or firm using that name constituted a valuable right, * * * but in this case the names of the partners constituted the name of the firm."

Nor can the plaintiff derive any comfort from the other cases cited by him. In none of them did the courts in the face either of an agreement by the parties that they were dealing with the good will, or in the face of reasonable implications that they were so dealing,[2] deny to the contract or actions of the parties the effect which they desired to give it, while in the Brown Case, though it was found from the facts there appearing that the parties had stamped the good will of the partnership as having no asset value, it was declared that "good will is presumptively an asset," and that, when the implication arises that it has been dealt with by the parties so as to give it a different quality, it must be drawn only after the life of the business has been scrutinized for every relevant circumstance affecting the intention of the partners, the court saying: "No doubt there must be caution before property interests of value are thus excluded by implication."

█ Referring to the vital facts of this case as stipulated and as reflected in the contract agreements of the parties, it here overwhelmingly appears that no implication against the asset value of the good will which Neuhaus had built up for the name of Neuhaus & Co. under which he had been doing business may be drawn, because the parties have expressly stipulated with reference to it, and it is fundamental that an express and an implied contract are mutually exclusive of each other.[3]

█ If, notwithstanding the express agreements, an implication may still be drawn, the living facts, beginning with the starting of the business by Neuhaus under the name of Neuhaus & Co. and the drawing to it through

many years of an established good will and continuing with the formation of the partnership under the terms and conditions of its articles down to the present time when the stipulation shows the same business is being conducted by the two partners under the same name under which Neuhaus founded it many years ago, permit of no other implication than that the parties intended and have acted upon and lived up to that intention, that Rotan, when he bought in the business, acquired not only an interest in the tangible assets, but the same interest in the established good will of the business.

Nor do the facts leave it at all in doubt that it was and continues to be a valuable interest which Rotan thus acquired, as the stipulation shows that, though twice the time fixed for the expiration of the contract has long since elapsed, these same men are doing the same business under the same name.

Upon these facts and the law applicable, no other conclusion is possible than that the parties bought and sold a good will as a definite, tangible asset, as substantial and as clear a thing as any physical asset which the business had, and that the law is with the defendant in its resistance to plaintiffs' claims.

Bill alleged that plaintiff engaged in transporting automobiles under private contract was informed by state railroad and warehouse commission that it would not be necessary to secure certificate of public convenience and necessity under Laws Minn. 1925, c. 185; that plaintiff thereafter built up large and profitable

---

[2] Fite v. Dorman (Tenn. Sup.) 57 S. W. 129, 136, where, in the face of the fact that there was no express contract upon the subject of good will of the business, it was found that it was the intention of all the parties that the good will of the old business should pass to the continuing partnership, and that it did pass by implication.

[3] Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, 709: "If there was an express contract, there could be no implied contract arising out of the acts of performance of it. The one is destructive of the other."