**E. A. TAORMINA et al., Appellants,**

v.

**Frank CULICCHIA et al., Appellees.**

No. 5514.

Court of Civil Appeals of Texas.

El Paso.

Feb. 28, 1962.

Rehearing Denied March 28, 1962.

Strickland, Wilkins, Hall & Mills, Mission, for appellants.

Johnson, Hester, Jenkins & Toscano, Harlingen, Henrichson & Bates, Edinburg, for appellees.

LANGDON, Chief Justice.

This suit was instituted by plaintiff Frank Culicchia to recover his proportionate interest in the assets of a partnership between him and the defendants, E. A. Taormina and others, evidenced by a written agreement of partnership between the parties covering a period of three years from January 1, 1954 to December 31, 1956, and which terminated by express provisions thereof on the latter date. Plaintiff contends that he is entitled to recover not only his interest in the partnership assets, but also a proportionate share of the profits realized by a new partnership formed by

defendants after the termination of the old partnership. Plaintiff's claim to a share in the profits of the new partnership is based upon the contention that defendants failed to account to him (for his share of the assets) within a reasonable time after the dissolution of the former partnership on December 31, 1956. He contends that defendants retained and used his investment from January 1, 1957 to August 10, 1959 before making an accounting and payment to him of his proportionate interest in the assets of the old partnership, and that he is therefore entitled to recover a proportionate share of the profits realized by the new partnership during such period. It is undisputed that plaintiff refused to become a partner in the new partnership, although he was invited and afforded the opportunity to do so.

The case was tried before a jury; however, during the progress of the trial various matters, by stipulation and agreement, were withdrawn from the consideration of the jury and left to the determination of the court. Other matters were submitted to the jury upon special issues. On April 13, 1959 the trial court entered an interlocutory judgment, from which an attempted appeal was made. Briefs were filed by both plaintiff and defendant, but the appeal was subsequently dismissed by an order of the San Antonio Court of Civil Appeals, dated February 24, 1960, on the grounds that the judgment of April 13, 1959 was not a final judgment. (Culicchia v. Taormina, Tex.Civ.App., 332 S.W.2d 803.)

Thereafter, the fixed assets of the partnership were disposed of, either by sale or by partition in kind between plaintiff and defendants, and final judgment was entered on the whole case on August 24, 1960.

Briefs filed by the parties in the first appeal (aborted by the Court of Civil Appeals' order of dismissal) have been withdrawn by the respective parties; and such briefs, together with additional original and supplemental briefs, have been filed in the instant appeal. In the first appeal plaintiff

was appellant and cross-appellee, and defendants were appellees and cross-appellants. In the appeal now before us, the position of the parties is reversed. Undue confusion has resulted from the fact that plaintiff has failed to re-brief the points of error which he relied upon in the first appeal in which he was appellant. Such points are now technically "Cross-assignments of Error" and are urged on this appeal (in which plaintiff is appellee) by way of a "cross-appeal." The confusion occasioned by the improvident re-filing of the original briefs from the former appeal is further aggravated by the fact that all the parties rely to some extent upon points, cross-points, argument and authorities contained in the "re-filed" briefs, and they sometimes fail to make a clear distinction in such briefs between appellant and appellee on this appeal. We have refrained from directing that the case be re-briefed (Rule 422, Texas Rules of Civil Procedure), but suggest that the parties might have avoided much of the confusion incident to this appeal had they themselves refrained from filing in this cause the briefs in the former appeal. In order to avoid further confusion, the parties will hereafter be referred to as they were in the trial court.

Defendants have appealed from that part of the trial court's judgment by which plaintiff was awarded the sum of $15,300.00 on account of good will, found by the jury to exist, and $2,000.00 as an auditor's fee based on a jury finding that the sum of $2,400.00 was a reasonable auditor's fee for the services performed.

Plaintiff has appealed by reason of the trial court's failure or refusal to allow him a recovery of his alleged proportionate share of the profits realized by the new partnership during the period from January 1, 1957 to August 10, 1959, during which period defendants failed to make an accounting and payment of plaintiff's interest in the assets of the former partnership.

Defendants have based their appeal upon seventeen points of error which fall into four general categories. The points have been grouped by defendant for presentation on this appeal, and they will be discussed and considered by us in the same manner.

Group One consists of defendants' Points 1, 2, 3, 4 and 12, complaining of alleged errors relative to the existence of "good will" as an item to be taken into consideration in an accounting between the parties.

Plaintiff and defendants, as partners, conducted a canning business at Donna, Texas. Under the terms of a written agreement the partnership was created for a term of three years commencing January 1, 1954 and terminating December 31, 1956. In December 1956, as the termination date of the partnership approached, the parties commenced negotiations among themselves for a new partnership agreement under which the business would have been continued by the same partners for an additional term of five years. The proposal was submitted to plaintiff, who declined to enter into a new partnership agreement unless he was paid a salary. Defendants refused plaintiff's demand for a salary and proceeded to form a new partnership without the plaintiff. At the close of business on the date of the termination of the old partnership, there was on hand, among other assets, an inventory of canned goods having a book value of $286,129.90. There were also current liabilities in excess of $161,000.00.

It was agreed between the parties that the new partnership would undertake the liquidation and sale of the inventory in the regular course of business. A dispute arose when the parties became unable to agree upon an accounting, and because of plaintiff's contention that the old partnership possessed a valuable intangible asset in the form of "good will", and that he was entitled to be paid his proportionate share of the value of the "good will", in addition to his proportionate share of the inventory and other tangible assets of the partnership. In the suit which followed, defendants denied the existence of good will as a re-

coverable asset, and alleged that the profits of the partnership and the success of same was attributable solely to the industry, ability and reputation of the managing partners, E. A. Taormina and A. F. Taormina, and that such good will, if any, was entirely personal to them. The jury, in answer to special issues, found that the partnership had a good will value over and above the value of its tangible assets, and further found the value of such good will to be the sum of $100,000.00.

There have been relatively few cases decided by the Texas courts involving the question of the value of "good will" as an asset of a business. However, the Texas courts have uniformly recognized and held that "good will" is property; that it may be the subject of bargain and sale; that it may be damaged or destroyed, and is like other property with respect to the right of the owner to recover damages for its destruction and, as such, "good will" although intangible, is an integral part of the business, the same as the physical assets of the business. Texas & P. Ry. Co. v. Mercer, 127 Tex. 220, 90 S.W.2d 557; Scott v. Doggett, Tex.Civ.App., 226 S.W.2d 183 (ref., n. r. e.); Rotan v. United States, 43 F.2d 232 (Tex.D.C., 1930); Alamo Lumber Co. v. Fahrenthold, Tex.Civ.App., 58 S.W.2d 1085 (error ref'd.).

In other jurisdictions the question of the nature, character and value of "good will" has been before the courts many times, and we believe the Texas decisions are in accord with the view expressed by the majority of the courts.

The term "good will" has been the subject of numerous definitions, and most of these definitions, although expressed in different words, convey the same meaning.

In the instant case the court inquired of the jury (Special Issue No. 6) whether the Taormina Company had a good will value over and above the value of its tangible assets on December 31, 1956, and in connection with such special issue submitted the following instruction:

"In answering the above and foregoing Special Issue you are instructed that the term 'good will' is the advantage or benefits which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant and habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

The definition of the term "good will" given in the instant case is substantially the same as the definition given by the trial court in the case of Texas & Pacific Ry. Co. v. Mercer, Tex.Civ.App., 58 S.W.2d 896, and inferentially approved by the Supreme Court (127 Tex. 220, 90 S.W.2d 557, supra) while reversing on other grounds. The same definition as that given by the trial court here for the term "good will" has long met with approval by the courts and was an accepted and approved definition even before it was again approved by the Supreme Court of Texas in an 1889 opinion written by Judge Gaines, in the case of Rice v. Angell, 73 Tex. 350, 11 S.W. 338, 3 L.R.A. 769.

On the question of the existence of good will, we believe the evidence is more than ample to support the jury's finding that the Taormina Company had a good will value. The record in this case reflects that plaintiff and one of the defendants, A. E. Taormina, began their association in the canning business as early as 1928, in a corporation known as the Uddo & Taormina Corporation. In 1934 there was a division of stock, and these two, with other relatives, formed the Taormina Corporation, which took over several brands and trademarks. The brands and trademarks have been used in selling canned goods ever since. In 1944 a partnership was formed (Taormina Company) as the operating

company and, with minor changes, the Taormina Company, by virtue of periodic partnership agreements, has been continued in effect with leases and agreements to use the real estate, brands and trademarks from the corporation ever since 1944.

According to the testimony of one of the defendants (A. F. Taormina), the partnership firm (Taormina Company) had occupied the same premises since 1944. The premises were owned by the Taormina Corporation, and new leases were drawn up each year. Except for the dates, the leases were identical and had been since the first lease was made to the partnership in 1944.

Following the termination of the last partnership agreement on December 31, 1956, the defendants, having obtained a new lease from the corporation, continued in business at the same location, using the same name, and dealing with substantially the same suppliers and customers that the previous partnerships had used and dealt with ever since 1944. The advantages accruing to the new partnership by virtue of all these favorable elements, although intangible, represent a valuable asset of the business, and is known as "good will".

We reject the defendants' contention that the "good will" of the partnership was personal to the defendants. While it is undoubtedly true that they each contributed to the success of the business by virtue of their hard work, industry and business acumen, it is by such efforts that good will is created. Good will is generally understood to mean the advantages that accrue to a business on account of its name, location, reputation and success. The fact that the good will of the business was created by or resulted from years of hard work and business effort on the part of only one or two of the several partners does not necessarily render the good will of the business personal to them. The value of the "good will" of a business depends upon the fixed and favorable consideration of customers arising from an established and well-known and well-conducted business. (See 18A Words and Phrases, Good Will, p. 210 et seq., for other definitions, factors and elements to be considered.)

Defendants' second group of points (Nos. 5, 6, 7, 8, 9, 10 and 11) presents alleged errors involving the ascertainment of the value of the good will.

At the trial, plaintiff sought to establish the value of the good will of the partnership by the testimony of a certified public accountant, B. S. Mothershead. Mr. Mothershead qualified as an expert for the purpose of expressing an opinion upon the question of the existence and value of good will. His testimony reflects that he was experienced in this field and was frequently consulted by people in the business world for the purpose of determining the existence and value of good will connected with the transfer and sale of properties; connected with the withdrawal of part-owners from business; the settlement of differences between clients and others; and in connection with estate and inheritance tax appraisals. He also testified that he had made an investigation of the partnership company, had observed its operations, and had examined its books. The witness, basing his opinion upon a personal investigation of the company, testified that the partnership firm had good will, and fixed its value at the sum of $533,514.45 as of December 31, 1956. The witness testified that the method used by him in determining the value of the partnership good will was based on a formula used by the Internal Revenue Service (A.R.M. 34), as well as by many private concerns. The formula is based upon excess earnings (earnings in excess of eight per cent to ten per cent of the average tangible net assets or invested capital of the business). Where the net profits exceed ten per cent of the tangible net assets or invested capital of a business, a good will value is indicated under the formula. The value of such good will is computed on the basis of the amount by which the net earnings of the business exceed normal earnings in the same or similar business.

The question of whether good will does or does not exist is one of fact for the jury to decide. While it is true that one test for determining the existence of good will is whether a reasonable man would pay anything for it, we do not believe this to be the exclusive test. The very nature of good will is such as would preclude a fixed standard by which its value might be determined in every case. For purposes of settlement or accounting, the value of the good will is to be determined in the light of all the facts of the particular case. 68 C.J.S. Partnership § 396, p. 910 et seq.

We are of the opinion that the trial court did not err in permitting the testimony of the witness Mothershead to be considered by the jury. Further, we are of the opinion that there was competent evidence to support the jury finding on the value of good will (Special Issue No. 7), and that the trial court did not err in submitting such issue and in awarding plaintiff the sum of $15,300.00 as his proportionate part of the value of the good will of the Taormina Company based on the jury finding.

From what we have said, it follows that we believe defendants' points (Group One) relating to the question of the existence of "good will", as well as those points (Group Two) relating to question of the value of such "good will" must be, and the same are accordingly overruled.

Defendants' third group of points (Points 13, 14 and 15), are attacks upon the competency of the testimony of plaintiff's witness, Mothershead, and the alleged error of the trial court in overruling defendants' motion to strike such testimony, and in permitting same to be considered by the jury. We first considered the matter of the competency of the testimony of the witness, Mothershead, in passing upon defendants' points (Groups One and Two), and have again reviewed and considered the testimony in the light of defendants' points presented under Group Three. It was defendants' contention throughout the trial that the profits of the partnership and the success of same were attributable solely to the industry, business acumen, ability and reputation of the managing partners, A. E. and A. F. Taormina; and the jury found, in answer to Special Issue No. 14, that the skill, industry, etc. of the managing partners was a dominant factor in the success of the partnership and in its profits and earnings. Defendants did not request an issue inquiring whether the good will of the partnership was personal to the two managing partners. Under the facts of this case, except for the purpose of establishing the fact that the partnership was a well-managed and successful business, as one of the elements of good will, it is immaterial which of the partners contributed most to the good will of the business in the absence of a finding that such good will was personal to such partner or partners. We have found no cases, other than those involving professional or highly specialized personal services, where it has been held that the good will attached solely to the person, and not to the business. We overrule defendants' points (Group Three).

■ Defendants' remaining points (Group Four, Points 16 and 17), are based on the contention that the trial court erred as a matter of law in rendering judgment for plaintiff for $2,000.00 as an auditor's fee paid by plaintiff to his witness, B. S. Mothershead, because such auditor was not appointed by the court to make an audit, but performed said work solely on behalf of plaintiff and at plaintiff's request, and for the purpose of being able to testify as an expert witness in plaintiff's behalf upon trial.

There is no statutory authority under which plaintiff may recover such expenses, and we are of the opinion that the trial court erred in submitting the question to the jury, and in rendering a judgment thereon for plaintiff.

Rule 172, Texas Rules of Civil Procedure, authorizes the trial court, when an investigation of accounts or examination of vouchers appears necessary in the interest of

justice, to appoint an auditor or auditors to state the accounts between the parties and to make a report thereof to the court, and in such case the court shall award reasonable compensation to such auditor to be taxed as costs of suit. Since the auditor in this case admittedly was not appointed by the court, and made no audit under the direction of the court, it was, we believe, beyond the power of the court to make an award to plaintiff for the expenses so incurred. Such expenses are allowed to be taxed as costs only where the auditor has been appointed by the court pursuant to Rule 172, Texas Rules of Civil Procedure, or the statute, Article 2292, Vernon's Annotated Texas Statutes, which was the source of the rule. Navarro v. Lamana, Tex.Civ.App., 179 S.W. 922 (error ref'd); Nicholson v. Mills, Tex.Civ.App., 227 S.W.2d 354 (rehear. den., error ref.); McGrew v. Britton, Tex.Civ.App., 206 S.W.2d 836 (n. r. e.).

Defendants' Points 16 and 17 are sustained. That portion of the trial court's judgment awarding plaintiff the sum of $2,000.00 for auditor's fee is reversed, and judgment is here rendered that plaintiff take nothing thereon.

This brings us to a consideration of plaintiff's cross-assignments of error.

The principal points urged by plaintiff are based on the contention that the trial court erred in its failure or refusal to recognize plaintiff's right to participate in post-dissolution profits realized by the Taormina Company between the time that the old partnership was terminated on December 31, 1956, and August 24, 1959, the date on which the new partnership paid plaintiff the sum of $113,437.29, plus interest, for his share of the assets of the former partnership. Plaintiff argues that the Taormina Company unreasonably withheld from him his proportionate share of the assets of the partnership and that, therefore, he had a right, if he chose to do so, to receive his share of the profits in the new partnership until his part of the investment was paid to him. Plaintiff was awarded $10,-984.12 in interest for the period during which his share of the assets was retained by defendants after the termination of the former partnership. He now contends that he was entitled, at his option, to take either interest or profits and that he has elected to take a share of the profits. Plaintiff asserts that the profits of the new partnership during such period were fabulously high, and he contends that his proportionate share of the profits would amount to approximately $89,000.00. However, in the absence of jury findings, or stipulation, upon the question of the amount of such profits, there was no basis upon which the trial court could award plaintiff a share of the profits, the amount of which had not been determined.

We recognize, as a general proposition, that where a co-partner retires, dies or is expelled from a partnership, and the business is continued by the remaining partners without a settlement of accounts, members of the partnership who continue to conduct the firm business after such dissolution may be compelled to compensate the former member or his legal representatives, for the money and capital assets of such partner used in the continuance of the business. If a share of the profits is sought, the amount of such profits must be established.

Among the assets on hand at the time of the termination of the partnership on December 31, 1956 was an inventory of canned goods having a book value of $286,129.20. With respect to this asset the parties agreed, and it is so stipulated, that the new partnership would undertake to liquidate the inventory at the best obtainable price, and the proceeds realized therefrom less the expense involved in making such sales, was to be accounted for in the settlement of accounts between the partners. This agreement was fully performed, although it took the new partnership all of the year 1957 and a large part of the year 1958 to sell such inventory for the sum of $471,568.77. The value of plaintiff's proportionate interest in the tangible assets of the partnership, however, was thereby enhanced. Because of the nature and complexity of the busi-

ness, and accurate accounting was difficult, and numerous conferences and negotiations were had between the parties for the purpose of ascertaining the total value of the partnership assets as of the date of termination, and the extent of plaintiff's interest therein.

Plaintiff's own witness, B. S. Mothershead, testified that it was impossible to determine plaintiff's interest, and that plaintiff was in no position to agree on any accounting until about December 10, 1957. Notwithstanding the necessity of liquidating the inventory, and in spite of the fact that numerous accounting problems were involved before a final accounting could be had, plaintiff made a demand on January 11, 1957 for immediate payment of his share of the partnership, including undivided profits. On September 3, 1957, while conferences and negotiations were continuing between the parties in an effort to arrive at an accounting, plaintiff filed this suit.

At the trial, plaintiff failed to establish the amount of the profits earned by the new partnership after January 1, 1957, or the amount of such profits attributable to the use of his capital. He made no request for the submission of any issue on the question of post-dissolution profits, the amount thereof, or the extent, if any, to which the use of his capital contributed to such post-dissolution earnings or profits. Consequently, having failed to obtain jury findings on matters vital to any award by the court based on plaintiff's asserted claim to post-dissolution profits, he may not now be heard to complain. The burden was upon plaintiff not only to meet the burden of proof required to establish his right to such profits, if any, but he also had the burden of showing the extent of the profits in which he asserted an interest, and the duty to request appropriate issues thereon. We are of the opinion that the trial court did not err in refusing to award plaintiff a share of the profits earned by the new partnership under the facts of the case before us. Plaintiff's points based upon such contention are therefore overruled. We have also considered

each of the other points raised by plaintiff, and believe the same should likewise be overruled, and it is so ordered.

As above noted, the judgment of the trial court is reversed and rendered in part, and in part affirmed.