NO. 07-10-0518-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 18, 2012
_____


KYLE JOHNSON AND DIONNE JOHNSON, APPELLANT

V.

GRAZE OUT CATTLE CO., APPELLEE


_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 96,305-D; HONORABLE DON R. EMERSON, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellants, Kyle and his wife, Dionne Johnson, appeal from a judgment in favor of Appellee, Graze Out Cattle Company,[1] in an action filed by Graze Out regarding an oral partnership agreement. In support, the Johnsons assert (1) Graze Out's evidence was legally and factually insufficient to establish the "liability and damages claims

_____
[1]Graze Out is a Texas corporation acting by and through its president, Willie Price.

against the Johnsons"[2] and (2) the trial court erred by awarding attorney's fees to Graze Out. We modify the trial court's judgment by reducing the award in favor of Graze Out from $28,479.00 to $24,787.58, by recalculating prejudgment interest; and, then as modified, we affirm the judgment.

## BACKGROUND

This case involves a dispute related to an oral partnership agreement and the dissolution of that partnership. During 2005, Kyle was considering the purchase of an existing catering and special event business—the Gathering Place, but he lacked the necessary financial resources. He approached Willie Price about financing the venture. Ultimately, Price (via his closely held corporation, Graze Out), Kyle and Dionne formed a partnership to purchase and operate the catering business.[3] The Johnsons agreed to be the partnership's day-to-day operators, i.e., they agreed to supply all the labor and make all the business decisions using their knowledge of the food industry,[4] while Price agreed to secure the financing for the partnership as well as provide accounting services.[5] Though no written partnership agreement was ever signed, the parties did agree to a fifty/fifty split of profits and losses.

---

[2]Although the Johnsons do not attack any specific finding, or implied finding, made by the trial court, their argument centers around the contention that Graze Out sought to establish their liability as partners on a note between Graze Out and Herring National Bank ("Herring note" or "note").

[3]On appeal, the trial court's finding that a partnership existed between the Johnsons and Graze Out is undisputed.

[4]Kyle had worked in the food service industry for fourteen years and was currently the manager of a successful steakhouse. Dionne had also worked as a restaurant manager for seven to eight years.

[5]Per their agreement, Price testified the Johnsons were to provide his accountant with relevant financial information on a regular basis so Price could keep track of the business through his accountant.

2

Subsequently, Graze Out, the Johnsons, and the Gathering Place's original owners, Joni and Christopher Prater, executed an *Agreement of Purchase and Sale of Business and Equipment*, thereby contracting to purchase the Gathering Place for $58,200.00. They also signed a *Bill of Sale and Assignment* wherein the Praters conveyed title to the business, its assets and equipment to Graze Out and the Johnsons, individually.

In January 2006, Price, as Graze Out's president, executed the Herring note[6] and borrowed $70,000.00. In the event of default, Graze Out was corporately liable for the debt, collection costs, and attorney's fees. The loan documents did not mention any partnership; however, both Price and Kyle personally guaranteed payment of the note. Pursuant to a *Commercial Security Agreement,* also signed by Price as Graze Out's president, the bank took a security interest in all assets belonging to Graze Out.

From the proceeds of the Herring note, $58,200.00 was used to purchase the Gathering Place and the balance was used to pay initial operating expenses. In addition to Graze Out's capital contribution to the partnership, Kyle contributed $12,000.00 worth of kitchen equipment and applied the proceeds of a $10,000.00 personal bank note to the partnership's operating expenses.

During operation of the business, proceeds totaling $27,074.84 were used to pay Graze Out's monthly payments due on the note. The Johnsons were also permitted to withdraw $30,000 for their personal expenses. In September 2006, Price called Dionne

[6]Graze Out earlier applied to Herring Bank for a $70,000.00 commercial loan to purchase the Gathering Place. The primary and secondary sources of repayment were to be revenues from the business itself, loan guarantors and the sale of collateral. Price signed the loan application as Graze Out's president. The application did not mention the Johnsons or any partnership.

to inquire how the business was doing. She indicated that, although she had provided regular financial information to Price's accountant, she had not received a financial statement. She asked Price where it was and he indicated his accountant was no longer working for him because he had been embezzling. Dionne then went to Price's office and found the documents she had been providing to Price's accountant on a weekly basis thrown in a box. She took the box to a local accountant and he prepared a financial statement for the partnership. The Johnsons paid the accountant $1,350.00 for the financial statement out of their personal bank account.

The financial statement confirmed what the Johnsons already knew and assumed Price knew through his accountant, i.e., the business was underwater. In addition, in January 2007, the lessor of the facility where the Gathering Place was situated informed Kyle that the monthly rent would have to be raised by $1,000.00. In February 2007, Kyle called Price and told him that the partnership would have to be dissolved because it was not making enough money to pay its expenses and could not pay the rent increase. At that time, all of the partnership's vendors had been paid. Price had a local restaurateur/caterer pick up the Gathering Place's equipment and the business was closed.

Price's children ultimately paid off Graze Out's remaining indebtedness on the Herring note, without taking a debt position against any partner or the partnership. Price retained in storage the equipment he picked up from the Gathering Place. Neither the Johnsons, Graze Out nor Price ever filed any partnership tax returns; however, in his personal tax return for 2006, Kyle paid income taxes on the $30,000.00 he withdrew from the business.

4

In January 2008, Graze Out filed its *Original Petition* requesting that the partnership be dissolved and asked for an accounting. Graze Out also asserted actions for breach of duty of loyalty, breach of duty of care, and breach of a partnership agreement. The Johnsons answered and in their *Second Amended Answer and Original Counterclaim for Declaratory Judgment* asked the trial court for a declaratory judgment resolving the amount of the parties' capital accounts and contributions.

Following a bench trial, the trial court issued its judgment dissolving the partnership and ordering the Johnsons to pay $28,479.00 to Graze Out. The judgment also required Graze Out to auction the equipment in its possession and retain the sale's net proceeds. The judgment against the Johnsons would then be reduced by 50% of the sales proceeds of the equipment. In addition to prejudgment interest of $1,423.95 and post judgment interest at five percent until the judgment is paid, the trial court awarded Graze Out $11,500.00 in attorney's fees plus costs of $1,012.20. This appeal followed. Despite being requested to do so, the trial court never filed findings of fact or conclusions of law. No notice of past due findings of fact and conclusions of law was filed.

## DISCUSSION

The Johnsons contend the evidence is legally and factually insufficient to establish Graze Out's liability and damage claim against them. They also assert there was no legal basis for the trial court to award attorney's fees to Graze Out.

Rule 296 authorizes any party in a nonjury trial to request written findings of fact and conclusions of law. Tex. R. Civ. P. 296. The request shall be filed within twenty days after the judgment is signed and served on all other parties in accordance with Rule 21a. *Id.* The trial court shall file its finding of fact and conclusions of law within twenty days of a timely filed request. Tex. R. Civ. P. 297. If the trial court fails to so file findings of fact and conclusions of law, "the party making the request shall, within thirty days after filing the original request, file with the clerk . . . a 'Notice of Past Due Findings of Fact and Conclusions of Law' which shall be immediately called to the attention of the court by the clerk." *Id.* If a party fails to file this Rule 297 reminder, the party waives any complaint regarding the trial court's failure to file findings of fact and conclusions of law. *See Conner v. Johnson*, No. 07-10-00085-CV, 2011 Tex. App. LEXIS 5589, at *8 (Tex.App.--Amarillo July 21, 2011, no pet.) (mem. op.); *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 410 (Tex.App.--Houston [1st Dist.] 2005, pet. denied) (complete failure to file notice of past due findings); *Fleming v. Taylor*, 814 S.W.2d 89, 91 (Tex.App.--Corpus Christi 1991, no writ) (untimely notice of past due findings).

Where no findings of fact or conclusions of law are filed, the reviewing court must presume that the trial court made such findings and conclusions as are necessary to support the trial court's judgment. *Black v. Dallas City Child Welfare Unit*, 835 S.W.2d 626, 630 (Tex. 1992). In reviewing the record to determine if there is any evidence supporting the judgment and its implied findings, it is proper to consider only the evidence favorable to the issue and disregard all evidence or inferences to the contrary. *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 276 (Tex. 1979).

6

Having reviewed the record, we find there is no evidence that the Herring note was a partnership obligation or liability. The note was signed by Price as president for Graze Out and the note's guarantors signed in their individual capacities. The note makes no mention of any partnership or its individual partners. Neither is there any evidence the bank believed it was dealing with a partnership, and, in the event of a default, Graze Out was corporately liable for the debt. The security agreement underlying the loan was also signed by Price as Graze Out's president and committed all its inventory, accounts, equipment, fixtures and general intangibles. Graze Out also submitted the loan application which, like the other loan documents, made no mention of any partnership or individual partners. Further, Price's children paid off Graze Out's indebtedness on the note after the partnership ceased operation which is indicative that Graze Out's obligation was not a partnership liability.

Because there is no evidence that the partnership agreed to assume Graze Out's indebtedness on the Herring note, we find the evidence legally and factually insufficient to support any presumption by the trial court that the note was a partnership obligation. *See Boyd v. Leasing Associates, Inc.,* 516 S.W.2d 485, 491 (Tex.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (where a note was signed by the partner in his individual capacity and did not purport to be a partnership obligation, the trial court's presumption that the note represented a partnership obligation was error). *Compare Rice v. Travelers Express Co.,* 407 S.W.2d 534, 537 (Tex.Civ.App.—Houston [1st Dist.] 1966, no writ) (note was a partnership obligation where a recital in the guaranty signed by a

partner stated that as a co-partner with debtor he recognized joint and several liability with the debtor to pay the indebtedness according to the note).

PARTNERS' CAPITAL ACCOUNTS

Having determined the note was not a partnership obligation, we examine the evidence to determine if the trial court's judgment correctly calculated the parties' capital accounts pursuant to the Texas Business Organizations Code (TBOC).[7] Finding the trial court's judgment was based upon an analysis of the partner's capital accounts, we reform the judgment to correct mathematical differences. *See Dunn v. Summerville*, 669 S.W.2d 319, 320 (Tex. 1984) (*per curiam*).

A "capital account" is computed by adding a partner's original and additional cash contributions to the partnership, the agreed value of any other property originally or additionally contributed by a partner to the partnership, and allocations of partnership profits to a partner, and then subtracting the amount of distributions[8] to that partner and allocating partnership losses to that partner. Tex. Bus. Orgs. Code Ann. § 151.001(1) West Supp. 2011).[9] *See Farnsworth v. Deaver*, 147 S.W.3d 662, 664-65 (Tex.App.— Amarillo 2004, no pet.).

---

[7]The parties cite to provisions of the Texas Revised Partnership Act (TRPA) even though the TRPA expired January 1, 2010. *Ingram v. Deere*, 288 S.W.3d 886, 894 n.4 (Tex. 2009); *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 166 n.15 (Tex.App.—Houston [1st Dist.] 2011, pet. denied). After that date, the TBOC applied to all partnerships, "regardless of their formation date." *Ingram*, 288 S.W.3d at 894 n.4; *Westside Wrecker Serv.,* 361 S.W.3d at 166 n.15.

[8]A "distribution" means "a transfer of property, including cash, from a partnership to a partner in the partner's capacity as a partner or the partner's transferee." See Tex. Bus. Orgs. Code Ann. § 151.001(2) (West Supp. 2011).

[9]Throughout the remainder of this opinion, provisions of the Texas Business Organizations Code will be cited as "section ____" or "§ ____."

Capital accounts having a positive balance are debts of the partnership and, being debts, they must be included within the liabilities for which the partners are ultimately responsible unless the partners have executed an agreement to the contrary. 147 S.W.3d at 664.[10]  In addition, "if the debts of the partnership exceed its assets (which also include the value assigned to each capital account) it can be said that the partners have suffered a capital loss." *Id.*  "[T]hese losses like all other debts, must be satisfied by the partners in direct proportion to their share of the profits." *Id.* (citing Vol. II, A. Bromberg & L. Ribstein, *Partnership,* § 7.10(b) p. 7:145-46 (2004)).  *See* §152.202(b) ("Each partner is charged with an amount equal to (1) the cash and value of other property distributed by the partnership to the partner; and (2) the partner's share of the partnership losses.")  *See also* § 152.707(c)-(d) ("The profits and losses that result from the liquidation of the partnership property must be credited and charged to each partners' capital accounts.")

Graze Out's capital account started out with the cash proceeds from the Herring note, $70,000.00.  No additions were made.  As to the Johnsons' capital account, Graze Out does not dispute Kyle's valuation of the restaurant equipment he contributed to the Gathering Place; however, it does contend we should ignore Kyle's testimony that he contributed $10,000.00 to the partnership from a personal account and advanced $1,350.00 in accounting fees because the trial court ostensibly gave no weight to his testimony.  We disagree.  When a party proves a vital fact or does not contradict a vital fact, its effect is a question of law and there is no issue for the fact finder.  *European*

---

[10]There being no partnership agreement here touching upon the subject, the TBOC controls.  *Farnsworth,* 147 S.W.3d at 664 n.2 (citing *Long v. Lopez*, 115 S.W.3d 221, 225 (Tex.App.—Fort Worth 2003, no pet.)).

*Crossroads' Shopping Center, LTD. v. Criswell*, 910 S.W.2d 45, 56-57 (Tex.App.—Dallas 1995, writ denied). Likewise, if there is no conflict in the evidence, the issue need not be submitted to the fact finder. *Vineyard v. Harvey*, 231 S.W.2d 921, 924 (Tex.Civ.App.—Amarillo 1950, writ dism'd). We have examined the record and find Kyle's testimony clear, positive and uncontradicted. Neither was there any objection to his testimony. As such, Kyle's testimony was sufficient to conclusively establish the fact of the contribution from his personal account and the advancement of the accounting fees. *See Commercial Insurance Co. of Newark v. Smith,* 596 S.W.2d 661, 665 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

On the other hand, the Johnsons assert their capital account should be credited for the contribution of their goodwill and reputations as restaurateurs to the partnership. Reputation is a type of goodwill and may be valuable intangible property. *Ingram*, 288 S.W.3d at 902 (citing *Tex. & Pac. Ry. Co. v. Mercer*, 127 Tex. 220, 90 S.W.2d 557, 560 (Tex. 1936)). The Johnsons' evidence of reputation and goodwill consists of their experience in the restaurant industry and prior annual salaries. This evidence fails to distinguish between any intangible value they may have brought to the business and their worth as employees or for services rendered. There was no evidence that clients came to the Gathering Place because of the Johnsons, the Gathering Place was marketed using the Johnsons' names or there was a change in the Gathering Place's initial value after they began operating the business. *Ingram,* 288 S.W.3d at 903. *See Taormina v. Culicchia,* 355 S.W.2d 569, 574-75 (Tex.Civ.App.--El Paso 1962, no writ) (value of goodwill testified to by accountant who was experienced in the field, had made an investigation of the partnership company, observed its operations and examined its

books). "At a minimum [a claimant must] prove that any such value can be distinguished from services rendered or property given as an employee." *Id.* Because there was no partnership agreement regarding any contribution or value regarding the Johnsons' reputation or goodwill, we conclude that the trial court did not err in failing to credit the Johnsons' capital account for goodwill. Therefore, the undisputed evidence admitted without objection establishes that the Johnsons contributed $10,000.00 from a personal account, $1,350.00 in accounting fees, and $12,000.00 in restaurant equipment, for a total capital contribution totaling $23,350.00.

During operation of the partnership, out of the partnership proceeds, $27,074.84 was applied to Graze Out's note and $30,000.00 was distributed to the Johnsons for their living expenses. Any contention that the $30,000.00 withdrawn by the Johnsons should be considered as compensation belies the fact that absent an agreement to the contrary, "[a] partner is not entitled to receive compensation for services performed for a partnership other than reasonable compensation for services rendered in winding up the business of the corporation." § 152.203(c). Because the partners agreed to split profits and losses fifty/fifty, and because, at the time of dissolution, all other partnership expenses had been paid from partnership income, we divide those allocated amounts ($27,074.84 + $30,000.00 = $57,074.84) by one-half, and add that sum ($57,074.84 ÷ 2 = $28,537.42) to each partner's capital account. § 151.001(1)(A). This results in a total of $98,537.42 ($70,000.00 + $ $28,537.42 = $98,537.42) in Graze Out's capital account and a total of $51,887.42 ($23,350.00 + $28,537.42 = $51,887.42) in the Johnsons' capital account.

We then deduct the distributions made to each partner leaving $71,462.58 in Graze Out's capital account ($98,537.42 - $27,074.84 = $71,462.58) and $21,887.42 ($51,887.42 - $30,000.00 = $21,887.42) in the Johnsons' capital account. §§ 151.001(1)(B), 152.202. Next, we allocate the partnership's losses which in this case are capital losses because the partnership lacks the funds to cover the amounts remaining in the partners' capital accounts. *Id.* Because Graze Out's account is the larger of the two accounts, we offset the balance in the Johnsons' account against the balance in Graze Out's account, leaving a balance of $49,575.16 in Graze Out's capital account ($71,462.58 - $21,887.42 = $49,575.16) and a zero balance in the Johnsons' account ($21,887.42 - $21,887.42 = $0). *See Farnsworth*, 147 S.W.3d at 665. Because the balance in Graze Out's account is considered a partnership debt which the partners bear fifty/fifty, we divide the balance by one-half resulting in a deficit balance in the Johnsons' account of ($24,787.58) and leaving a credit balance in Graze Out's account of a like amount. *Id.* Accordingly, the Johnsons owe the partnership $24,787.58 to satisfy their one-half share of the partnership's obligation to satisfy Graze Out's capital loss.

Because this sum substantially supports the trial court's judgment, we sustain Johnsons' first issue as it relates to the Herring note, but otherwise overrule the issue as to an allocation of the partners' capital accounts. Accordingly, we modify the trial court's judgment by reducing the award in favor Graze Out against the Johnsons from $28,479.00 to $24,787.58.

When a judgment is remanded for the limited purpose of entering a new judgment, or reformed by an appellate court, the judgment creditor is entitled to postjudgment interest on the corrected judgment calculated from the date of the original erroneous judgment. *See Thornal v. Cargill,* 587 S.W.2d 384, 385 (Tex. 1979); *Bramlett v. Phillips*, 359 S.W.3d 304, 312 (Tex.App.--Amarillo 2012, pet. filed); *D.C. Hall Transport, Inc. v. Hard,* 335 S.W.2d 257, 260 (Tex.Civ.App.--Fort Worth 1962, writ ref'd n.r.e.). The judgment entered reflects that Graze Out is entitled to prejudgment interest at the rate of 5% per annum from January 4, 2008, until the date of judgment, December 6, 2010 (1,067 days). Based upon the modified judgment, Graze Out is entitled to prejudgment interest totaling \$3,623.06 (\$24,787.58 x .05 ÷ 365 x 1,067 =\$3,623.06).

ATTORNEY'S FEES

The Johnsons next assert the trial court erred in awarding attorney's fees to Graze Out because such an award is not provided for by statute or agreement. We disagree.

Whether a party is entitled to recover attorney's fees is a question of law for the trial court which we review *de novo. Brent v. Field,* 275 S.W.3d 611, 621 (Tex.App.—Amarillo 2008, no pet.). A party may recover reasonable attorney's fees in a suit founded on a claim for breach of an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008). *See Long*, 115 S.W.3d at 228 (holding attorney's fees are recoverable by a partner under section 38.001(8) who brings an action against

another partner premised on a partnership agreement, which was a contract); *see also Atterbury v. Brison*, 871 S.W.2d 824, 828 (Tex.App.—Texarkana 1994, writ denied). Accordingly, Graze Out was entitled to recover reasonable and necessary attorney's fees in accordance with the trial court's judgment. The Johnsons' second issue is overruled.

**CONCLUSION**

We modify the trial court's judgment by reducing its award to Graze Out against the Johnsons from $28,479.00 to $24,787.28, and by recalculating prejudgment interest at $3,623.06. As modified, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice