**Opinion issued October 22, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00370-CV

————————————

**SENTINEL INTEGRITY SOLUTIONS, INC., Appellant**

**V.**

**MISTRAS GROUP, INC., JODY W. OLSON, AND CAREY ROBERTS,
Appellees**

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Case No. 2010-11229**

---

## O P I N I O N

Appellant, Sentinel Integrity Solutions, Inc. ("Sentinel"), sued appellees,

Mistras Group, Inc., Jody W. Olson, and Carey Roberts, for damages arising out of

Olson's alleged breach of a covenant not to compete in his employment agreement

with Sentinel and Mistras's alleged tortious interference with the employment agreement. In bench conference before the submission of the charge to the jury, Sentinel agreed with the defendants that the scope of the covenant not to compete was overbroad as to its geographic limits. The trial court submitted eight questions to the jury on Sentinel's claims against Mistras and Olson's claims for attorney's fees. The jury charge did not address the enforceability of the covenant not to compete or Olson's alleged breach, and Sentinel did not object to the charge. The jury returned a verdict finding no liability on the part of any of the defendants. After the jury reached its verdict, the court reformed the covenant not to compete at Sentinel's request. The trial court then entered judgment that Sentinel take nothing on its claims and that it pay Olson's attorney's fees pursuant to Texas Business and Commerce Code section 15.51.

In seven issues, Sentinel argues that: (1) "the covenant not to compete [was] enforceable as a matter of law," that "even if the contract was 'at will,' the covenant was enforceable," that the trial court had a mandatory duty under section 15.51(c) to reform the covenant not to compete to cause its limitations "to be reasonable and to impose a restraint that is not greater than necessary" and "to Enforce the covenant as reformed," and that "[t]he trial court erred in determining the covenant was unenforceable and ordering the parties to a jury trial" and "in placing the issue of attorneys' fees before the jury"; (2) the evidence was

2

insufficient to support the jury's finding, pursuant to section 15.51, that Sentinel knew at the time of execution of the employment agreement that the covenant did not contain reasonable limitations and that it sought to enforce the limitations to a greater extent than was necessary to protect its business interests; (3) the attorney's fees awarded were not "actually incurred" by Olson; (4) the attorney's fees were not properly segregated; (5) the conditional appellate attorney's fees were not actually and reasonably incurred; (6) the trial court's award of $750,000 in attorney's fees for trial expenses and $200,000 in conditional appellate fees should be reversed and rendered or reformed; and (7) the trial court erred in granting pre-judgment interest on attorney's fees.

We remand the award of appellate attorney's fees. We further modify the judgment to delete the award of pre-judgment interest and affirm as modified.

## Background

Olson works as an inspector of oil and gas refinery equipment. He obtained certification from the American Petroleum Institute in 2002 and worked for a variety of companies supervising "turnarounds," or inspections that are conducted under time-sensitive conditions while the facility is shut down. In February 2008, Olson began working for Sentinel, a Houston-based inspection company, as a turnaround supervisor. In January 2009, Sentinel promoted Olson to the position of assistant division manager of the Corpus Christi office.

3

On August 1, 2009, Sentinel's general manager, Scott Corey, presented Olson with an employment agreement. The agreement provided the effective date for Olson's promotion to assistant division manager and stated the covered duties and managerial responsibilities covered by the agreement. The employment agreement also contained a covenant not to compete, which provided, inter alia, that Sentinel "has and will disclose" confidential information regarding customers, customer representatives, employees, and specialized training. The covenant not to compete required that Olson "refrain from competing with the Company or otherwise engaging in 'Restricted Activities' (as defined below), for a reasonable period of time" in order to protect the confidential information. The covenant defined the "Restricted Period" as "a period of three (3) years after the Termination Date [during which Olson] will not, directly or indirectly, as an employee, officer, director, shareholder, proprietor, agent, partner, recruiter, consultant, salesman, independent contractor or in any other individual or representative capacity engage in any of the Restricted Activities." The covenant also provided that, upon termination without cause, or in other circumstances within Sentinel's discretion, it would pay Olson four weeks' salary.

The covenant not to compete defined "Restricted Activities" as including:

(i)     Conducting, engaging or participating in . . . Inspection, Risk Based Inspection and Asset Integrity Management services in any capacity in which Employee served while working with Company, if such activity is on behalf of a customer that

4

Employee called upon or serviced while employed by Company. Notwithstanding the foregoing, the term "Restricted Activities" as defined herein shall apply only if Employee voluntarily terminates his employment with Employer, or if Employer terminates Employee's employment with Employer for cause as defined in this Agreement[;]

(ii)  Recruiting, hiring, and/or attempting to recruit or hire . . . any employees . . . of the Company; or contacting or communicating with any other employees of the Company or any of its Customers for the purpose or with the intent of inducing such other employees to terminate their employment with the Company or a Customer. . . ;

(iii)  Communicating, by any means, . . . with any Customer or Customer Representative, to or for which the Company has provided services at any time during Employee's employment by Company;

(iv)  Communicating, by any means . . . with an employee of the Company after the Termination Date, provided, however, that the foregoing shall not be deemed to preclude any casual contacts which are strictly social . . . ;

(v)  Using, disclosing, publishing, copying, distributing or communicating any Company Information of any nature;

(vi)  Using, disclosing, publishing, copying, distributing or communicating any Confidential Information of any nature.

The covenant not to compete defined the "Restricted Area" as including seven cities and four counties in Texas, plus locations in California, Utah, Louisiana, Pennsylvania, Colorado, Wyoming, and Trinidad and Tobago. The Restricted Area also included "a twenty (20) mile radius around all customers'

jobsites and/or project facilities that Employee called on or serviced on behalf of Employer in all geographic regions, wherever located."

The covenant not to compete also provided:

Employee and Company agree that the limitations as to time and scope of activity to be restrained are reasonable and do not impose a greater restraint on Employee than is necessary to protect the property rights and other business interests of Company. Notwithstanding the foregoing, Employee reserves the right to seek reformation of the limitations as to the time and scope of activity in a court of competent jurisdiction, in accordance with Section 9, paragraph (a) hereunder.

The modification provision in Section 9, paragraph (a) provided in relevant part:

If any part of this Agreement is adjudged by a court of competent jurisdiction to exceed the applicable legal limitation, then such provisions shall be reformed to the maximum time, geographic or other limitations permitted by applicable law, it being the parties' intention to permit the reviewing court to modify this Agreement to the extent necessary to cure any such invalidity or unenforceability.

Olson signed the employment agreement on August 7, 2009. After several months of employment as an assistant manager, Olson determined that the demanding managerial position was a strain on his family and contacted appellee Carey Roberts, a man Olson had met while working for a previous employer. Roberts worked for Mistras, a company that specialized in non-destructive testing. In the fall of 2009, Mistras offered Olson a job as a turnaround inspector—the type of job he had previously had at Sentinel before his promotion to assistant manager and the execution of the employment agreement. Olson remained at Sentinel as an

6

assistant manager until he gave his notice of termination in December 2009, and he began working for Mistras as a turnaround supervisor in January 2010.

On February 23, 2010, Sentinel filed its original petition and request for injunctive relief, alleging that the covenant not to compete was enforceable against Olson under section 15.50(a) of the Texas Business and Commerce Code,[1] which requires that, in addition to being part of otherwise enforceable agreement, a covenant not to compete must contain reasonable limitations as to time, geographical area, and scope of activity to be restrained in order to be enforceable; that Olson breached the covenant not to compete; and that Mistras and Roberts tortiously interfered with the contract between Olson and Sentinel by hiring Olson.[2] Sentinel's petition sought damages and attorney's fees, and it included a demand for a jury trial. It also sought injunctive relief in the form of a request for a temporary restraining order and a temporary injunction. Sentinel also pled, "In the alternative, if the Court should find that the covenant not to compete is not reasonably limited as to time, geographical area, or scope of activity, the Court

---

[1] *See* TEX. BUS. & COM. CODE ANN. § 15.50(a) (Vernon 2011).

[2] Sentinel also originally alleged that Olson breached a confidentiality agreement, breached a fiduciary duty owed to Sentinel, misappropriated Sentinel's trade secrets, including theft of software productivity tools, and committed computer fraud and abuse.

7

should reform the covenant as provided by Texas Business & Commerce Code § 15.51(c)."

The trial court conducted a hearing in May 2010, and, on July 12, 2010, it denied Sentinel's application for a temporary injunction and granted summary judgment dismissing Sentinel's claims for "theft/misappropriation of trade secrets under the Theft Liability Act, theft of trade secrets, computer fraud abuse, civil conspiracy, and breach of fiduciary duty." [3] Sentinel appealed the denial of its application for a temporary injunction to this Court, but it eventually moved to dismiss the appeal after the record and briefing were filed.[4] This Court issued a memorandum opinion granting Sentinel's motion to dismiss on January 18, 2011.

The case was tried to a jury from September 27 through October 14, 2011. Olson presented evidence that, prior to signing the employment agreement in August 2009, he questioned Corey about the terms of the non-compete clause in an e-mail exchange. Olson stated:

> I have read the contract and I am happy with the terms and conditions and ready to sign it and send it back. However the three year no compete with two weeks of compensation seem[s] inadequate. . . .

---

[3] The trial court also issued numerous other orders, including an order granting in part Sentinel's motion to compel arbitration, an order granting Sentinel's subsequent motion to vacate the order compelling arbitration, and an order granting Olson's motion for partial summary judgment.

[4] The interlocutory appeal resulted in cause number 01-10-00607-CV.

8

Three years seem[s] a long time with two weeks of compensation. I think six months would be fair for a three year no compete.

Corey responded:

The no compete does not prevent you from working TA's, etc., or from being employable within the inspection industry. So if you were fired, laid-off, etc. tomorrow, you would simply pick up the phone and call one of your many choices to go to work as an inspector. During the agreement period (3 years) it provides 4 weeks of compensation, not 2 as stated in your emails. . . . 4 weeks of compensation is plenty considering that no one else in our industry would even consider this. The 2 weeks you are referring to is for the period of time following the expiration of the 3 year agreement, if that were to even happen.

Olson also testified regarding the nature of his work for Mistras. He testified that he worked as a turnaround supervisor, doing inspections just as he had done prior to his promotion at Sentinel. He testified that he occasionally contacted people on Mistras's list of independent contractors to see who was available to work on upcoming turnarounds, but he got those names from Mistras, and the contractors were not employees of Sentinel. He did not have the authority to hire them or determine their pay. He did not perform any managerial duties for Mistras.

Corey testified at trial that Sentinel wanted to enforce the covenant not to compete as written in the employment agreement. He stated that he believed Olson was prevented from performing for a competitor any duties encompassed by the role of a manager for Sentinel: "If he became a manager for us, and also that

9

included sweeping the floors at Sentinel, that means that he can't go to [Mistras] and sweep the floors, in my opinion. 'In any capacity,' is what it says. Now, inspector, manager, supervisor, dishwasher, it doesn't matter."

Regarding the geographic area covered by the non-compete, Corey testified that "[w]hen we wrote this geographic area that's covered [in the covenant not to compete], there's no possible way we could have a crystal ball to know what Mr. Olson, or any other manager, what projects or what areas they may be working in tomorrow, next week, or next year." He explained that they solved this problem by including broad provisions: "So we do the best job we can to list the specifics that we know about at the time a contract is put in place to cover pretty much all the general areas that we think or anticipate would be covered. And if there's other areas that are added, then they would be covered; and that's why we have provisions that allow the court to modify it."

John Zavitsanos, attorney for Olson, Mistras, and Roberts, testified regarding Olson's reasonable and necessary attorney's fees.

Before submitting the case to the jury, Sentinel's counsel stated, on the record but outside the presence of the jury, "We agree that the geographical restrictions are overbroad. We do not agree that the rest of the noncompete or the agreement to which it is—otherwise enforceable agreement to which it is ancillary or part of is unenforceable as written." Counsel for Sentinel also agreed that the

10

"provision regarding the geographical scope" of the non-compete agreement needed to be reformed.[5] Sentinel maintained, however, that it had a valid tortious interference claim against Mistras "for interfering with the remainder of Mr. Olson's employment agreement."

At the formal charge conference, the trial court presented a jury charge that asked: whether Sentinel provided Olson a definite term of employment, specialized training, or confidential information in connection with the non-competition agreement (Question 1); whether Mistras intentionally interfered with the employment agreement between Olson and Sentinel and, if so, whether Sentinel suffered any damages as a result (Questions 2 through 6); whether Olson had made the factual showing necessary to obtain attorney's fees under section 15.51(c) (Question 7); and the amount of Olson's reasonable attorney's fees for defending against Sentinel's claim that he breached the covenant not to compete (Question 8). Sentinel did not object in any way to the jury charge.[6]

In its verdict, returned on October 14, 2011, the jury found no liability on the part of any of the defendants to Sentinel. It found that Sentinel had provided Olson

---

[5]    Sentinel states in its brief that it made a request for reformation "in open court." The agreement that the geographical area covered by the covenant would need to be reformed is the only discussion of potential reformation recorded in the record.

[6]    The record does not contain any indication of the changes, if any, that were made to the jury charge based on Sentinel's concession that the geographical scope of the covenant not to compete was overbroad and needed to be reformed.

11

with confidential information in connection with the non-competition agreement, but it had not provided a definite term of employment or specialized training; that Mistras did not intentionally interfere with the employment agreement between Olson and Sentinel; that Sentinel knew at the time the employment agreement was signed that the covenant not to compete contained limitations as to time, geographical area, or scope of activity to be restrained that were not reasonable and that it sought to enforce the limitations to a greater extent than necessary to protect its business interest; and that "a reasonable fee for the necessary services of Jody Olson's attorneys in this case in defending the claim that Jody Olson breached the non-competition agreement in this case" was $750,000 for preparation and trial, $150,000 for an appeal to the court of appeals, and $50,000 for an appeal to the Texas Supreme Court.

On October 17, 2011, Sentinel filed an application for reformation of the covenant not to compete and permanent injunction, which it subsequently amended on October 31, 2011. Sentinel asked the trial court to restrict Olson from competing within a 100-mile radius of its Corpus Christi office, the area in which Olson had worked for Sentinel, and from working or performing services for any Sentinel clients for whom Olson "worked or [whom he] called on, regardless of location." It also sought reformation of the scope of activities, asking that Olson be restricted from acting as a manager in the inspection business, as a turnaround

12

supervisor, or as a supervisor. On October 21, 2011, Sentinel moved to withdraw the case from the jury, asking the trial court to render judgment, and on October 24, 2011, Sentinel filed a motion for judgment notwithstanding the verdict, arguing that the evidence was legally insufficient on the attorney's fees issue.

The trial court reformed the non-compete agreement, but it did not order a permanent injunction. It also entered final judgment awarding Olson attorney's fees in the amount of $750,000 for fees incurred during litigation in the trial court and $200,000 in conditional appellate attorney's fees, and it awarded Olson, Mistras, and Roberts court costs as prevailing parties. The final judgment also included an award of pre-judgment interest on the amount of attorney's fees incurred by Olson that had already been paid.

## Covenant Not to Compete

In part of its first issue, Sentinel argues that the trial court erred in failing to determine enforceability as a matter of law and that the covenant not to compete between it and Olson was enforceable as a matter of law. It argues, "Because the covenant is enforceable, the trial court should have reformed it and abused its discretion in failing to do so."

## A. Enforceability of the Covenant Not to Compete

Olson argues that Sentinel waived its complaints that the trial court erred in failing to determine enforceability as a matter of law and that the covenant not to

13

compete was enforceable as a matter of law. We agree. Rather than seeking a ruling from the trial court that the covenant not to compete was enforceable, Sentinel requested a jury trial seeking damages against Olson and Mistras. Sentinel then conceded on the last day of trial that the covenant was overbroad and, therefore, not enforceable as written. Sentinel's counsel agreed on the record that, at least as to geographical area, the covenant not to compete was overbroad, and it specifically informed the trial court that it believed that the geographical area covered by the covenant required reformation. *See* TEX. BUS. & COM. CODE ANN. § 15.50(a) (Vernon 2011) (requiring that, in addition to being part of otherwise enforceable agreement, covenant not to compete must contain reasonable limitations as to time, geographical area, and scope of activity to be restrained in order to be enforceable); *see also Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011) (holding that "[t]he hallmark of enforcement is whether or not the covenant is reasonable" and stating that "the statute's core inquiry is whether the covenant" contains reasonable limitations). Sentinel cannot now complain on appeal that it got what it asked for. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) ("[A] party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as 'the invited error' doctrine.").

14

Furthermore, Sentinel did not object to the submission of Question 1, asking the jury whether Sentinel provided additional consideration in connection with the non-competition agreement. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829 (Tex. 2012) (complaint to jury charge is waived unless specifically included in objection); *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 873 (Tex. 1973) (holding that failure to object before charge is read to jury waives complaint). Nor did Sentinel present the trial court with a request for a legal ruling on this issue prior to the submission of the charge to the jury. *See* TEX. R. APP. P. 33.1 (providing that complaint by timely request, objection, or motion in trial court is required to preserve issue for consideration on appeal).

Thus, Sentinel has waived, for purposes of appeal, any argument that the trial court was obligated to make a legal ruling on the enforceability of the covenant not to compete.

## B. Reformation of the Covenant Not to Compete

Sentinel also argues that the trial court had a duty to reform the covenant not to compete under Business and Commerce Code section 15.51.[7] Because the trial court did reform the covenant, at Sentinel's request, and Sentinel does not

---

[7] In part of its second issue, Sentinel argues, "Then, there is the matter of the trial court's failure or refusal to act upon Sentinel's continued requests for reformation." Sentinel does not support its assertion that it made repeated requests for reformation with citations to the record, nor does our review of the record reveal any request for reformation other than the motion for reformation Sentinel filed after the jury returned its verdict.

challenge the reformed covenant on appeal, we construe this as an argument that the trial court erred in failing to reform the covenant not to compete until after the case had been submitted to the jury.

The Covenants Not to Compete Act provides procedures and remedies in actions to enforce covenants not to compete. It provides:

> If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed . . . .

TEX. BUS. & COM. CODE ANN. § 15.51(c) (Vernon 2011). Reformation pursuant to section 15.51 is a remedy to be granted at a final hearing, whether on the merits or by summary judgment, not as interim relief. *Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464, 470 (Tex. App.—Waco 2011, no pet.); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 238–39 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

The record reflects that, other than a one sentence pleading in the alternative in its original petition, Sentinel maintained throughout the course of the litigation that the covenant not to compete was enforceable as written. It did not abandon this argument until almost the end of trial, when it conceded that, at least as to the

16

geographical area, the covenant did not contain reasonable restrictions and needed to be reformed. It did not affirmatively ask the trial court to reform the agreement until after jury had returned its verdict, but, once Sentinel requested reformation, the trial court reformed the agreement. Because Sentinel never sought a final hearing on this issue before the jury trial took place, and because it would have been inappropriate for the trial court to reform the covenant without holding a final hearing, we conclude that Sentinel has failed to show error on the part of the trial court.

Moreover, Sentinel has made no showing or argument that, had it timely sought reformation, rather than seeking it after rendition of the jury's verdict on the charge to which it agreed, the jury's findings on liability would have been different. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

We overrule Sentinel's first issue as it relates to the enforceability of the covenant not to compete.

## Attorney's Fees

In its remaining issues, Sentinel complains of the award of attorney's fees to Olson under Business and Commerce Code section 15.51(c).

## A. Facts Relating to Attorney's Fees

John Zavitsanos, attorney for Olson, testified regarding the attorney's fees incurred in this case. He stated that Olson incurred attorney's fees and that Mistras advanced Olson's fees pursuant to an agreement between them. Sentinel did not object to this testimony. However, in its motion for judgment notwithstanding the verdict, Sentinel argued that Olson did not properly disclose his indemnification agreement with Mistras and that the evidence was legally insufficient to prove that Olson incurred the expense of attorney's fees because he did not admit into evidence a copy of a written document demonstrating his arrangement with Mistras. Mistras argued that it had disclosed the potential indemnity to Sentinel and attached its responses to Sentinel's requests for disclosure under Rule of Civil Procedure 194.2, in which it stated, "Defendants . . . may have indemnity rights pursuant [to] the Amended and Restated Bylaws of [Mistras]."

Mistras also attached to its motion for entry of judgment a copy of the assignment of claims executed between Olson and Mistras, Mistras's certificate of incorporation and bylaws, and correspondence in which Mistras informed Sentinel of its intention to seek reimbursement from Sentinel for fees Mistras had advanced in defense of the claims against Olson. The assignment of claims stated that Olson might be entitled to "Indemnification Rights" based on his employment with Sentinel or other applicable law, that Mistras had advanced payment of attorney's

fees and other costs "for Olson's benefit through at least October 7, 2011," and that "Mistras [might] terminate advancement of Fees and Costs, in Mistras's sole and absolute discretion, at any time after October 7, 2011." It also stated that "Mistras shall have the sole and absolute right to recover its entire actual Fees and Costs, without limitation, out of any recovery from the Indemnification Rights."

Olson introduced a summary of the attorney's fees incurred in the case, supported by the billing records, which was admitted without objection.[8] The documentary evidence of Olson's attorney's fees included approximately 170 pages of redacted billing records reflecting the tasks performed by various attorneys and support personnel, the amount of time required for those tasks, the billable rate charged by the various attorneys and personnel, and other litigation expenses incurred in the course of the litigation. The summary reflected total actual billings of $734,750 and included an estimate that Olson would incur an additional $100,000 in fees through the October 2011 trial, for a total of $834,750.

Olson also presented the testimony of Zavitsanos, his attorney. Zavitsanos testified that Mistras paid the fees in this case because it "had an arrangement where they would advance the fees for him." Zavitsanos testified that the billings submitted were "net hours" and did not include time that he "wrote off" for his

---

[8]     Olson also presented the affidavit of the business manager for Zavitsanos's law firm, attesting to the amount of attorney's fees that Mistras had already paid on Olson's behalf.

own review of associate attorney work that he "did not feel was appropriate to double up" or for extra research for which the client should not have been billed. He also testified that the summary contained an estimate of the "time and money that will be spent through the conclusion of this trial for the month of October" that had not been billed to the client yet. He testified that during trial and "probably for the two weeks before" the attorneys "probably work at least 12 to 14 hours a day, maybe more." He testified that the trial itself lasted three and half weeks.

Zavitsanos also testified that the summary and attached bills did not include every expense incurred—he testified that he knew some attorneys had worked on the case whose hours were not reflected in the billing. The summary also did not include attorney time spent consulting with experts on damages or computer forensics, expenses related to attorney travel to Memphis where Olson was working at one point during the pending litigation, or expenses related to Roberts. Zavitsanos stated, "I'm limiting myself to the fees that we are entitled to under the Business and Commerce Code section that concerns noncompetes."

Zavitsanos also testified generally about his qualifications and experience, stating that he had been practicing law in the Houston area, among other locations, since he graduated from law school in 1987 and had done "a fair number of employment cases and trade secret cases and things of that sort." He also testified that he was board certified in civil trial law. He stated that he was familiar with the

rates charged by attorneys in Harris County and the rates for this specific type of case involving employment disputes.

Regarding the work performed in this particular case, Zavitsanos testified that the number of "emergency matters that Sentinel requested" early on in the case required intensive work that prevented firm employees from working on other matters. Zavitsanos also stated that discovery in this case was "very, very challenging." He outlined the usual course of discovery in a case of this complexity, including written discovery, depositions, and forensic computer experts, and he stated,

> And all of that was done here; but it was done repeatedly, repeatedly, repeatedly, repeatedly. I mean, I cannot recall—I have been doing this almost 25 years. I cannot recall a case where we have had to get—we have had to file so many motions to get basic information out of the other side as much as this case.

He testified that the temporary injunction hearing was delayed by prolonged discovery on Sentinel's part, that when the hearing occurred, it lasted for a week as opposed to the more typical two or three hour hearing, and that Sentinel also filed an interlocutory appeal challenging the trial court's denial of its application for temporary injunction. Zavitsanos testified that the firm expended "close to $100,000 responding to that appeal; and then right before we were to appear before the court of appeals to argue the case, [Sentinel] dropped the appeal."

21

After the parties had designated that they were prepared to proceed to trial and the case had been assigned a preferential trial setting, Sentinel also pursued arbitration "out of left field" against Olson, which it then subsequently dropped after four months. Zavitsanos stated that this arbitration action "probably involved over $150,000 in fees that [Mistras] paid, over 150,000 that was unnecessary" because Sentinel later changed its position and returned to the trial court to try all of its claims. He also testified that defending this case was very difficult because Sentinel repeatedly changed legal theories and added and dropped numerous factual allegations and because Sentinel had taken "some very novel [legal] positions."

Zavitsanos testified that "at least 90 percent" of the amount reflected in the summary and billing had been devoted to defending Olson against the enforcement of the "noncompetition agreement versus any of these other claims that . . . might have been in and out of the case at other times or not before the jury at this time." He stated: "[A]ll the current claims, they all stem from the construction, the application, the reading of Mr. Olson's agreement." He specifically stated that "with the exception of about 10 percent" of the total included in the summary and attached billings, "every minute is either directly related to . . . the noncompete claims concerning Jody Olson or claims that are intertwined so tightly with the noncompete that you can't—you can't separate one from the other." He went on to

22

give the specific examples of "the week-long temporary injunction hearing, that was only about a noncompete, nothing else" and stated that "the work reflected on the invoices that we are requesting reimbursement for under the statute, it is either directly related—directly related to the noncompete issues or intertwined with the noncompete issues." Although Sentinel's counsel questioned Zavitsanos about the "intertwined" nature of the claimed attorney's fees, Sentinel did not object to the evidence supporting the request for attorney's fees on any basis.

Zavitsanos testified that, of the approximately $834,000 in billing presented as evidence, Olson was requesting ninety percent of that as related to defending against the claims under the covenant not to compete, which amounted to $751,275. He stated that due to the length of the trial, and the fact that "an appeal would involve a review of the entire record and research of the issues that they have raised," an appeal in this case "would be about $150,000." In the event of further appeal to the Texas Supreme Court, the fees would be an additional $50,000 because "most of the work would have been done with the court of appeals." He testified that, based on his experience and familiarity with rates charged for similar services, he believed that the rates reflected in the billing and the amount of time billed were reasonable and necessary.

**B.      Submission of Olson's Entitlement to Attorney's Fees to Jury**

In the second part of its first issue, Sentinel argues that the trial court erred in submitting the issue of Olson's entitlement to attorney's fees to the jury. It argues that the issue of attorney's fees was a question of law for the trial court to determine and that the trial court erred in "allowing an 'advisory jury' to determine" the issues in Question 7 of the jury charge. In its second issue, it argues that the trial court erred in granting judgment for attorney's fees because there is no evidence, or insufficient evidence, that Sentinel knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable or that it sought to enforce the covenant to a greater extent than was necessary.

Because this case involves the enforcement of a covenant not to compete, the Covenants Not to Compete Act applies and preempts "any other . . . procedures and remedies," including the common law. TEX. BUS. & COM. CODE ANN. § 15.52 (Vernon 2011); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 645 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Section 15.51(c) provides for the award of attorney's fees to an employee in limited circumstances:

> If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain

24

limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

TEX. BUS. & COM. CODE ANN. § 15.51(c). Because the statute provides that "the court may award" attorney's fees, the award of attorney's fees is within the trial court's discretion and is not mandatory. *Spring v. Walthall, Sachse & Pipes, Inc.*, No. 04-09-00474-CV, 2010 WL 2102988, at \*11 (Tex. App.—San Antonio May 26, 2010, no pet.) (mem. op.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (holding that statutes providing that court "may award" are permissive and require abuse of discretion to overturn order granting or denying award)).

As a predicate to an award of attorney's fees under section 15.51(c), Olson had to prove that (1) Sentinel knew at the time the employment agreement was executed that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect Sentinel's goodwill or other business interest, and (2) Sentinel sought to enforce the covenant to a greater extent than was necessary to protect its goodwill or other business interest. *See* TEX. BUS. & COM. CODE ANN. § 15.51(c); *Spring*, 2010 WL 2102988, at \*12.

25

Olson was required to establish these facts before the trial court could exercise its discretion to award attorney's fees. *See* TEX. BUS. & COM. CODE ANN. § 15.51(c); *Spring*, 2010 WL 2102988, at \*12.

Sentinel does not provide any argument on appeal that these determinations should be construed as questions of law rather than as questions of fact. Sentinel did not object to the jury charge in this case before it was submitted to the jury, and it never requested that the trial court, rather than the jury, make the factual determination required by section 15.51(c). Thus, it waived any complaint regarding the submission of this issue to the jury. *See Cruz*, 364 S.W.3d at 829 (complaint to jury charge is waived unless specifically included in objection); *Cross*, 501 S.W.2d at 873 (holding that failure to object before charge is read to jury waives complaint).

However, the jury question complained of—Question 7—asked whether "Sentinel (1) [knew] at the time the Employment Agreement was signed that the covenant not to compete did not contain limitations as to time, geographical area, or scope of activity to be restrained that were reasonable and (2) [sought] to enforce the limitations to a greater extent than necessary to protect [its] business interest[.]" It did not ask the jury whether Olson was ultimately entitled to attorney's fees based on that finding; that determination was made by the trial court in rendering the final judgment. *Cf. Burrow v. Arce*, 997 S.W.2d 229, 245–

26

46 (Tex. 1999) (concluding that, although contested fact issues may be resolved by jury, ultimate decision regarding equitable remedy of forfeiture of attorney's fees is discretionary but "must be made by the court").

Sentinel argues, in its second issue, that "[t]he trial court erred in adopting the 'advisory jury's' answer to Question No. 7," or, in the alternative, that the evidence is legally and factually insufficient to support the jury's answer to Question 7. Regardless of whether the trial court or the jury made the required resolution of the fact questions in Question 7, the sufficiency of the evidence supporting the predicate findings of section 15.51 is subject to the same review. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994) (holding that trial court's findings of fact have same weight as jury's verdict, and we review legal and factual sufficiency of evidence used to support them as we would review jury's findings).

In a legal sufficiency, or "no-evidence" review, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In conducting this review, we credit favorable evidence if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable fact-finder could not. *Id.* We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.* at 822.

We must sustain a no-evidence contention only if (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

In reviewing the factual sufficiency of the evidence, we "must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

The jury found, and the trial court impliedly agreed, that Sentinel knew at the time the employment agreement was signed that it did not contain reasonable limitations and that Sentinel sought to enforce the limitations to a greater extent than necessary to protect its business interests. Olson cites Corey's testimony that he purposely made the geographical area covered by the non-compete provision broad "to cover pretty much all of the general areas that we think or anticipate would be covered" and Corey's testimony that he relied on a provision allowing a trial court to reform the agreement if necessary. The covenant not to compete expressly stated that "Employee and Company agree that the limitations as to time and scope of activity to be restrained are reasonable," but it was silent on the

reasonableness of the geographic area. Olson argues that this supports a conclusion that Corey did not attempt to tailor the non-compete provisions to areas where Olson would be working, even though the terms of the agreement itself showed that Corey knew such specificity could be required by a court reforming the agreement.

Olson also cites his e-mail to Corey, stating that the three-year time limitation in the non-compete was excessive considering that he would only receive two weeks' severance pay, and Corey's response, stating that Olson would still be entitled to work as an inspector doing turnarounds. Olson argues that this exchange supports a conclusion that Corey knew that the three-year period of enforcement for the broad provisions regarding the activities to be restricted— which included a general restriction against "[c]onducting, engaging or participating in . . . Inspection, Risk Based Inspection and Asset Integrity Management services in any capacity in which Employee served while working with Company"—were unreasonable.

Olson also cites evidence supporting the finding that Sentinel attempted to enforce the limitations of the non-compete to a greater extent that was necessary to protect its business interests. Sentinel sought to enforce the non-compete provision's general ban on "competing," including restricting Olson from working in geographic areas that were not tailored to Olson's work on behalf of Sentinel or

29

even to Sentinel's own current business. Sentinel also sought to prevent Olson from working for Mistras, where Olson worked conducting inspections, in spite of Corey's assurance in the e-mail that the non-compete did not prevent Olson from working turnarounds as an inspector. Corey testified that Sentinel wanted to prevent Olson from doing work for a competitor "in any capacity" that overlapped with managerial duties at Sentinel: "If he became a manager for us, and also that included sweeping the floors at Sentinel, that means that he can't go to [Mistras] and sweep the floors, in my opinion. 'In any capacity,' is what it says. Now, inspector, manager, supervisor, dishwasher, it doesn't matter."

We agree that this evidence supports the jury's factual determination in Question 7. Viewing the evidence in the light most favorable to the finding, we conclude that there is more than a scintilla of evidence that Corey knew at the time he entered into the employment agreement on behalf of Sentinel that the non-compete was unnecessarily broad and lacked reasonable limitations and that Sentinel sought to enforce the covenant to a greater extent than necessary to protect its interests. *See City of Keller*, 168 S.W.3d at 810, 822.

Sentinel, however, cites Corey's testimony that he obtained the form for the employment agreement with the covenant not to compete on the internet, Olson's testimony that he signed the employment agreement of his own free will, and the e-mail Olson sent to Corey stating that he was happy with the terms and conditions

30

in the employment agreement to support its argument that the evidence was insufficient to support the findings here. Nevertheless, even considering this evidence, we cannot conclude that the finding was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Arias*, 265 S.W.3d at 468.

We conclude that the evidence was sufficient to support the predicate findings required by section 15.51(c) to permit an award of attorney's fees.

Even in light of the jury's finding, Sentinel argues that *Lazer Spot, Inc. v. Hiring Partners, Inc.* prevents an award of attorney's fees here because, as it argues in its brief, "the court of appeals expressly held that the new employers of a promisor under a covenant not to compete with a former employer are not entitled to recover attorney's fees." *See* 387 S.W.3d 40, 53 n.24 (Tex. App.—Texarkana 2012, pet. denied) ("Because the express language of the statute does not apply here, Lazer Spot is not entitled to attorney's fees under Section 15.51(c). We find no authority to support the proposition that a third party, such as Lazer Spot, is entitled to attorney's fees pursuant to this section of the statute.") (internal citations omitted). However, *Lazer Spot* is distinguishable because the award of attorney's fees here was made to Olson himself, not to Mistras.

The only other argument that Sentinel advances on appeal opposing the trial court's determination that Olson was entitled to attorney's fees is its argument that

the trial court's error contributed to the attorney's fees in this case: "Failing to perform its duty as a matter of law, the trial court committed errors of law that contributed to lengthy litigation, and unnecessary increased fees. The trial court participated in and compounded the error resulting in the instant challenged fee award." We have already concluded that the trial court did not fail to perform its duty to reform the covenant not to compete. Although the protracted litigation in this case may have served to increase the amount of attorney's fees incurred, Sentinel, as the plaintiff, was in a better position to resolve the matter than the trial court.

Thus, Sentinel has failed to show that the trial court abused its discretion in awarding Olson attorney's fees. *See* TEX. BUS. & COM. CODE ANN. § 15.51(c); *Spring*, 2010 WL 2102988, at \*11 (stating that because statute provides that "the court may award" attorney's fees, award of attorney's fees is within trial court's discretion and is not mandatory).

We overrule Sentinel's first and second issues.

## C. Amount of Attorney's Fees

In its third issue, Sentinel argues that the trial court erred in granting judgment for $750,000 in attorney's fees because the fees were not "actually and reasonably incurred by the promisor in defending the action to enforce the covenant." *See* TEX. BUS. & COM. CODE ANN. § 15.51(c) (allowing promisor, like

32

Olson, who has established statutory predicate facts, to recover "the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant").

The issue of the amount of attorney's fees to be awarded here was a fact question that was submitted to the jury. *See Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) ("Generally, the determination of reasonable attorney's fees is a question of fact. . . ."); *Bocquet*, 972 S.W.2d at 21 (analyzing attorney's fees under Declaratory Judgments Act and stating, "In general, '[t]he reasonableness of attorney's fees, the recovery of which is authorized by . . . statute, is a question of fact for the jury's determination'") (quoting *Trevino v. Am. Nat'l Ins. Co.*, 168 S.W.2d 656, 660 (Tex. 1943) (analyzing award of attorney's fees in conjunction with suit on insurance policy)); *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997) ("The award of appellate fees is a question of fact for the jury. As such, we will not disturb the jury's decision to award the Aiellos less than they requested.").

The jury charge asked the jury, "What is a reasonable fee for the necessary services of Jody Olson's attorneys in this case in defending the claim that Jody Olson breached the non-competition agreement in this case, stated in dollars and cents?" The jury was given a list of factors to consider in determining the amount of a reasonable fee. It found that Olson was entitled to $750,000 for preparation

33

and trial, $150,000 for an appeal to the Court of Appeals, and $50,000 for an appeal to the Supreme Court of Texas.

Sentinel did not object to this question before the charge was submitted to the jury. Thus, it has waived any complaint that the jury did not consider fees "actually incurred" in reaching its answer. *See Cruz*, 364 S.W.3d at 829 (complaint to jury charge is waived unless specifically included in objection); *Cross*, 501 S.W.2d at 873 (holding that failure to object before charge is read to jury waives complaint). We measure the sufficiency of the evidence to support the jury's answer against the charge that was actually given. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge."); *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 90 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("When the parties have not objected at trial to the substance of the law set forth in the jury charge, we review sufficiency of the evidence in light of legal standards contained in the unobjected-to charge.").

Regarding the amount of attorney's fees, the party applying for the award bears the burden of proof. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012). In *El Apple*, the supreme court stated:

> That proof should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services

34

and their rate, (3) approximately when the services were performed, and (4) the number of hours worked. An attorney could, of course, testify to these details, but in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information.

*Id.* at 763. Thus, the supreme court held that, when applying for a fee under the lodestar method, "the applicant must provide sufficient details of the work performed before the court can make a meaningful review of the fee request" and that such evidence includes "documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *Id.* at 764.

Here, the record contains a summary of Olson's attorney's fees, showing a "grand total" of $834,750 in fees incurred through the end of trial. This summary was supported by approximately 170 pages of redacted bills detailing the services that resulted in those fees, including the type of services performed, the amount of time expended on each service, the identity of the person who performed them and their billable rates, and the dates the services were performed. Zavitsanos's testimony on the amount of fees incurred explained and expounded upon the billings admitted into the record and the fees incurred as a result of the trial that had not yet been billed to Olson. Zavitsanos further testified, based on his knowledge of the rates in Harris County and his experience with similar litigation, that the fees requested were reasonable and necessary. His testimony detailed the

work done on this case, including an emergency injunction hearing, a temporary injunction hearing, an interlocutory appeal, extensive discovery, an aborted arbitration, and numerous other motions and pleadings required to defend Olson against Sentinel's claim that he breached his covenant not to compete. Zavitsanos opined that at least ninety percent of the work included in total billed amount of $834,750 was work that either directly related to defending Olson on the non-compete claim or was so intertwined that it could not be separated. The jury awarded Olson almost ninety percent of the total billing.

Sentinel argues that "the evidence establishes the sum of $271,384.75 in attorneys, paralegals, secretaries and others' fees were billed from the inception of the case until just after the trial court's four day temporary injunction hearing regarding the covenant not to compete." However, Zavitsanos's uncontested testimony established that numerous legal proceedings occurred following the temporary injunction hearing in which Olson incurred attorney's fees in defending against Sentinel's claim that he breached the non-compete, including an interlocutory appeal of the trial court's denial of the temporary injunction, Sentinel's attempt to pursue arbitration against Olson, and a three-and-a-half-week trial. Other than this argument, Sentinel does not contest the reasonableness of Olson's attorney's rates or the amount of time spent on representing Olson.

We conclude that the evidence was sufficient to support the jury's award of $750,000 in attorney's fees to Olson.

We overrule Sentinel's third issue.

## D.    Segregation of Fees

In its fourth issue, Sentinel argues that the trial court erred in awarding $750,000 in attorney's fees because the fees were not segregated.

Because attorney's fees are only recoverable pursuant to a contract or statute, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (citing *Aiello*, 941 S.W.2d at 73). However, the supreme court has recognized a narrow exception "when discrete legal services advanced both a recoverable and unrecoverable claim" and thus "are so intertwined that they need not be segregated." *Id.* at 313–14. The court stated:

> This standard does not require more precise proof for attorney's fees than for any other claims or expenses. Here, Chapa's attorneys did not have to keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of her petition; an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim. The court of appeals could then have applied standard factual and legal sufficiency review to the jury's verdict based on that evidence."

*Id.* at 314.

Here, Zavitsanos testified that the amount included in the summary and supporting bills introduced at trial did not include every fee and expense incurred in the course of trial. For example, Zavitsanos testified that Carey Roberts, one of the other defendants in this case, was "swallowing" his attorney's fees because there was no valid legal basis for him to request them from the court. Zavitsanos further testified that the amounts sought by Olson were all for work related directly to defending against Sentinel's claim that he breached the covenant not to compete or for work that was intertwined with that claim. Zavitsanos opined that, of the work presented in the billing admitted at trial, "at least" ninety percent of it was necessary in defending Olson against Sentinel's claim for breach of the covenant not to compete.

On appeal, Sentinel does not identify any specific amount of time or items of work that were included in the fees requested by Olson that were attributable only to non-recoverable legal fees, aside from its general allegation that "[t]here is no evidence discre[te] legal services promoted both the defense of the tortious interference claims against Mistras, as well as the claim for attorney fees to reform the non-compete agreement." As indicated above, Zavitsanos's testimony is some evidence that numerous, discrete legal services either related directly to the claim against Olson or were intertwined with that claim.

Thus, we conclude that Olson's evidence supporting his attorney's fees was sufficiently segregated. *See id.* at 313–14. We have already concluded that the evidence was sufficient to support the jury's award. *See id.* at 314.

We overrule Sentinel's fourth issue.

## E. Conditional Appellate Fees

In its fifth issue, Sentinel argues that the trial court erred in awarding Olson conditional appellate attorney's fees because there was "no evidence that such fees were or have been actually and reasonably incurred."

We read the trial court's judgment as awarding appellate attorney's fees only after the expense is incurred as a result of Sentinel's unsuccessful appeal. We therefore reject Sentinel's position and conclude that the record demonstrates, based on Zavitsanos's testimony, that Olson did incur attorney's fees in defending against Sentinel's unsuccessful appeal to this Court. *See Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 493 (Tex. App.—Dallas 2005, no pet.) (rejecting argument that conditional appellate attorney's fees had not been "incurred" as required by Civil Practice and Remedies Code for award of attorney's fees). However, pursuant to the supreme court's holding in *El Apple*, we conclude that the record on appeal does not, at this time, contain sufficient evidence supporting the amount of attorney's fees incurred by Olson on appeal. *See* 370 S.W.3d at 764 ("For purposes of lodestar calculations, [evidence

39

supporting a request for attorney's fees] includes, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required."). The only evidence supporting the award of appellate attorney's fees was Zavitsanos's very general testimony that Olson would incur about $150,000 in fees if the case were appealed to this Court and an additional $50,000 in fees in the event of an appeal to the Texas Supreme Court.

Accordingly, we sustain part of Sentinel's fifth issue and remand for the trial court to adjust the amount of appellate attorney's fees awarded to conform to the applicable lodestar calculations.

## F.    Pre-judgment Interest on Attorney's Fees

In its sixth issue, Sentinel argues that the trial court erred in granting pre-judgment interest on attorney's fees.

Sentinel first argues that award of pre-judgment interest on the attorney's fees was improper because section 15.52 preempts any other provisions or law that might entitle Olson to relief. Olson does not address the preemption issue at all. However, the statute permits recovery of "the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in *defending the action to enforce the covenant*." TEX. BUS. & COM. CODE ANN. § 15.51(c) (emphasis added). The purpose of pre-judgment interest is to compensate a party

for the lost use of money due as damages during the lapse of time between the accrual of the claim and the date of the judgment. *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 388 (Tex. App.—Houston [14th Dist.] 2004, no pet.). While the lost use of the money paid as attorney's fees might, in some circumstances, be considered a cost incurred in defending the action to enforce the covenant under section 15.51, that does not appear to be the situation here. Olson did not pay the attorney's fees, so he did not incur any costs in the form of lost use of the money paid in attorney's fees on his behalf by Mistras.

Thus, we conclude under the facts of this case, that the award of pre-judgment interest on the attorney's fees that had already been paid on Olson's behalf do not fall under the permitted statutory recovery. *See* TEX. BUS. & COM. CODE ANN. § 15.51(c). This court and others have held that the Covenants Not to Compete Act preempts "any other . . . procedures and remedies," including the common law. *See id.* § 15.52; *Glattly*, 332 S.W.3d at 645; *Perez v. Tex. Disposal Sys., Inc.*, 103 S.W.3d 591, 593–94 (Tex. App.—San Antonio 2003, pet. denied) (concluding that employer that was not entitled to fees under section 15.51 was also not entitled to fees under any other statute because section 15.51's remedies provisions, including provision addressing attorney's fees, preempts award under any other law).

41

We sustain Sentinel's challenge on this issue, and delete the award of pre-judgment interest from the judgment.[9]

## Conclusion

We reverse the award of conditional appellate attorney's fees and remand for further proceedings consistent with this opinion. We further modify the judgment to delete the award of pre-judgment interest and affirm as modified.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Bland.

---

[9]     Thus, we need not address Sentinel's contention that there is a split in the courts of appeals regarding the award of pre-judgment interest on paid attorney's fees. *See Nova Cas. Co. v. Turner Constr. Co.*, 335 S.W.3d 698, 706 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (recognizing that some courts of appeals have held that award of pre-judgment interest on attorney's fees paid before judgment is improper, but concluding that award of such pre-judgment interest is within trial court's discretion). Nor do we need to address Sentinel's seventh issue, arguing that the evidence was insufficient to support the trial court's award of pre-judgment interest.