

NUMBER 13-19-00221-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

AMERICAN SURGICAL ASSISTANTS,
INC., D/B/A AMERICAN SURGICAL
PROFESSIONALS                                                    Appellant,

v.

GEORGE VILLAREAL,                                               Appellee.

On appeal from the 117th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

Appellant American Surgical Assistants, Inc. (American) perfected an appeal from

a take-nothing judgment rendered against it and in favor of appellee George Villareal.

American filed suit under the Covenants Not to Compete Act (the Act) for reformation and

injunctive relief to enforce noncompete covenants against Villareal. *See* TEX. BUS. & COM. CODE ANN. §§ 15.50–.52. The trial court granted a temporary restraining order against Villareal, then subsequently dissolved the temporary restraining order and denied American's application for a temporary injunction. After a bench trial on the merits, the court rendered final judgment on April 26, 2019, denying all relief sought by American and awarding attorney's fees to Villareal. By seven issues, American generally contends that the trial court erred by not reforming the covenants to render them enforceable (issues 1 and 4), concluding that the noncompete covenants were not enforceable (issues 2 and 3), and awarding attorney's fees (issues 5 through 7). We affirm.

## I. BACKGROUND

American provides surgical assistants to surgical facilities and physicians. Villareal had worked as a surgical assistant in the military and after his service, he worked to obtain his certification as a surgical assistant through the National Surgical Assistant Association. Villareal then began working for American as a surgical assistant in November 2009. American claims that during his employment at American, Villareal received confidential information pertaining to American's operations, performance, contracts with facilities, objectives and initiatives for improving or increasing its business, and financial condition. American also claims that Villareal's access to American's clients and the patients of those clients necessarily includes access to confidential information. Upon his employment with American, Villareal signed an employment agreement which also contained a confidentiality agreement, both of which included covenants not to compete, non-solicitation agreements, and confidentiality provisions. The employment

2

agreement contained the following relevant language in a "Confidentiality and Non-Competition" section:

> Assistants shall not directly or indirectly offer his/her services as described in the attached job description or engage in doing business within an extended radius of Five Miles from the present address of [American] at 10039 Bissonnet #250, Houston, Texas 77036 and/or the address of any of its client institutions. This covenant shall remain in force for the duration of this Agreement and for a period of Two Years from date of termination of Agreement.

The confidentiality agreement, in part, stated:

> 3. **Non-Competition and Non-Solicitation** The Employee/Independent Contractor/PRN acknowledges that he or she will acquire considerable knowledge about, and expertise in, certain areas of the Employer/ Contractor's business and that he or she will have knowledge of, and contact with, customers and suppliers of the Employer/Contractor and its Affiliates (as hereafter defined). The Employee/ Independent Contractor/ PRN further acknowledges that he or she may well be able to utilize such knowledge and expertise, following termination of his or her service with the Employer/Contractor, to the serious detriment of the Employer/Contractor in the event that the Employee/Independent Contractor/PRN should solicit business from customers of the Employer/Contractor or its affiliates. Accordingly, the Employee/Independent Contractor/PRN agrees that:
>
>> **(a)** **Non-Competition.** During his or her employment and for a period of two (2) years after termination of his or her employment, the Employee/Independent Contractor/PRN shall not in any way offer his or her services to any of [American's] client institutions or client surgeons.
>>
>> **(b)** **Non-Solicitation of Customers.** He or she will not, for a period of two (2) years after termination of his or her employment, directly or indirectly, approach any customer or business partner of the Employer/Contractor or its Affiliates for the purpose of providing services substantially similar to the services provided by the Employer/Contractor or its affiliates; and
>>
>> **(c)** **Non-Solicitation of Employee/Independent Contractor/ PRNs.** He or she will not for a period of two (2) years after termination of his or her employment, directly or indirectly, approach, solicit, entice or attempt to approach, solicit or entice any of the other Employee/Independent Contractor/

PRNs of the Employer/Contractor or its Affiliates to leave the employment of the Employer/Contractor.

The employment agreement began on November 30, 2009, and was "for an initial period of one year unless either party notifies the other of his/her intent to terminate the Agreement, in writing, with a fifteen days advance notice." American and Villareal renewed the agreement eight times before Villareal resigned in October 2018. Villareal then began working for Universal Surgical Assistants, Inc. (Universal). American, alleging that Villareal was in violation of his signed agreements with American, filed suit under the Act for reformation and injunctive relief to enforce the agreements between the parties. American sought a temporary restraining order, temporary injunction, reformation of the covenants, and a permanent injunction to enforce the covenants as reformed. The temporary restraining order was granted, and subsequently expired under its own terms. The case was then tried to the bench and the trial court rendered final judgment denying American's requested relief and awarding attorney's fees to Villareal. This appeal followed.

## II.    ENFORCEABILITY

The Act governs the enforceability of noncompetition agreements. *See* TEX. BUS. & COM. CODE ANN. §§ 15.50–.52. The enforceability of a covenant not to compete is a question of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the trial court's determinations of questions of law on a de novo basis. *Barber v. Colo. Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex. 1995).

Section 15.50 provides in relevant part:

Notwithstanding Section 15.05 of this code, and subject to any applicable provision of Subsection (b), a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the

4

agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM. CODE ANN. § 15.50(a). The requirement of an "otherwise enforceable agreement" is satisfied when the covenant is part of an agreement which contains "mutual, nonillusory promises." *Marsh USA, Inc. v. Cook,* 354 S.W.3d 764, 773 (Tex. 2011). An "otherwise enforceable" agreement "can emanate from at-will employment so long as the consideration for any promise is not illusory." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 648 (Tex. 2006). A noncompetition agreement must be supported by consideration to be enforceable. *Id.* at 651; *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681 n. 6 (Tex. 1990). "Consideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus." *Marsh,* 354 S.W.3d at 775; *see Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 46 (Tex. App.—Texarkana 2012, pet. denied).

Here, the trial court found that American had "no protectable interest or goodwill worthy of protection." American, however, contends that the record established goodwill through the development of "close relationships between surgeons and surgical assistants" and that Villareal developed such relationships with American's surgical clients. American also argues that it invested time and money into Villareal's training so that he could develop those close relationships. American claims that Villareal gained a potential competitive advantage by learning American's information about "the pay mix of surgeons and facilities." Because of this, American contends that it has an "interest in preventing the diversion of this goodwill to a competitor."

## A.    Employment Agreement

Under § 15.51(b), if the employment agreement involves personal services, the burden is on the employer to prove that the covenant is necessary to protect its legitimate business interests. *See* TEX. BUS. & COM. CODE ANN. § 15.51(b). Under the common law, the employer must prove that the agreement was necessary. *Martin v. Linen Sys. for Hosps., Inc.,* 671 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1984, no writ). In its findings of fact, the trial court found that Villareal did not "approach, solicit, entice, or attempt to approach, solicit, or entice [American] employees or customers to leave [American]. . ." and that American "did not provide George Villareal with confidential, proprietary, or trade secret information." *See Daytona Grp. of Tex., Inc. v. Smith*, 800 S.W.2d 285, 289 (Tex. App.—Corpus Christi–Edinburg 1990, writ denied); *see also Diesel Injection Sales & Servs. v. Renfro*, 656 S.W.2d 568, 572 (Tex. App.—Corpus Christi–Edinburg 1983, writ ref'd n.r.e.). The trial court also found that the covenant failed the balancing test of hardship to the promisor and injury to the public, stating that "[e]ven if there were a protectable interest or goodwill worth [sic] of protection, which there is not, the hardship of protecting such would be outweighed by the harm to the public and George Villareal."

The Texas Legislature declared that "[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful." *Marsh*, 354 S.W.3d at 770 (quoting TEX. BUS. & COM. CODE ANN. § 15.05(a)). The Supreme Court of Texas has concluded that covenants limiting employees' professional mobility are unlawful restraints of trade under this statute unless they fall within the exception created by the Act. *Id*. at 768, 770; *see also id.* at 782 (Willett, J., concurring); *Forum US, Inc. v. Musselwhite*, No. 14-17-00708-

6

CV, 2020 WL 4331442, at *5 (Tex. App.—Houston [14th Dist.] July 28, 2020, no pet. h.) (mem. op.). As the court explained, "[u]nreasonable limitations on employees' abilities to change employers . . . could hinder legitimate competition between businesses and the mobility of skilled employees." *Marsh,* 354 S.W.3d at 769. The Act provides that a covenant is enforceable only if "it contains limitations as to time, geographic area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN. § 15.50(a); *see id.* § 15.51(c); *see also Marsh*, 354 S.W.3d at 777 ("The hallmark of enforcement is whether or not the covenant is reasonable."); *DeSantis*, 793 S.W.2d at 681 (explaining similar standards of reasonableness that had to be met to enforce covenants not to compete at common law).

American contends the trial court erred in its findings because it has a protectable interest in goodwill. American's contention is based on its argument that Villareal developed his relationships with the surgical clients during the time he worked for American, and that American invested "time and money into Villar[r]eal's training in the cardiothoracic specialty" that allowed him to develop such relationships. American, therefore, argues that the goodwill developed by Villareal accrued to the benefit of American.

> Texas law has long recognized that goodwill, although intangible, is property and is an integral part of the business just as its physical assets are. *Alamo Lumber Co. v. Fahrenthold,* 58 S.W.2d 1085, 1088 (Tex. App.—Beaumont 1933, writ ref'd); *Taormina v. Culicchia,* 355 S.W.2d 569, 573 (Tex. App.—El Paso 1962, writ ref'd n.r.e.). Goodwill is defined as:
>
>> the advantage or benefits which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it

7

> receives from constant and habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.
>
> *Taormina,* 355 S.W.2d at 573; *see also* BLACK'S LAW DICTIONARY 703 (7th ed. 1999) (defining "goodwill" as "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business . . .").

*Marsh*, 354 S.W.3d at 777–78. Goodwill cannot merely be a blanket assertion by which American can limit Villareal's mobility in his employment. *See id*. at 784 (Willett, J., concurring) (noting that "the evidentiary record must demonstrate special circumstances beyond the bruises of ordinary competition such that, absent the covenant, [appellee] would possess a grossly unfair competitive advantage"). While the Act permits a noncompete clause, it is only "to the extent it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is *necessary* to protect the goodwill or other business interest of the promisee." *See* TEX. BUS. & COM. CODE ANN. § 15.50(a).

The trial court's finding that even if American had goodwill worthy of protection, the burden placed on Villareal would outweigh any hardship American would face is not contested by American. Although findings of fact are not conclusive when, as in this case, a complete reporter's record is provided, "unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 717 (Tex. App.—Corpus Christi–Edinburg 2004, pet. withdrawn). Instead, American argues that the goodwill created between Villareal and the doctors he assisted is goodwill earned by American and deserves protection through the noncompete. American further

8

contends that the noncompete is needed to protect its investments in Villareal's specialized training in the cardiovascular field as well as to ensure Villareal does not disclose the confidential information he received through his employment with American. However, the trial court heard evidence that enforcing the covenant would indeed be a burden on Villareal as he testified that he would not be able to be employed in his field where he lives, and may potentially hinder his ability to perform cardiovascular procedures at all. According to Villareal's testimony, the doctors performing the cardiovascular procedures would also be negatively affected as they would be limited in assistants in a field where there are not many available. Accordingly, we are bound by this unchallenged finding of fact. We conclude that the covenant not to compete here would hinder legitimate competition between businesses and the mobility of skilled employees and is therefore unenforceable. *See Marsh*, 354 S.W.3d at 769. When a covenant not to compete is not necessary to protect the employer's legitimate business interests, it cannot be reformed. *See, e.g., Neurodiagnostic Tex, L.L.C. v. Pierce*, 506 S.W.3d 153, 166 (Tex. App.—Tyler 2016, no pet.); *Daytona*, 800 S.W.2d at 290.

**B.     Confidentiality Agreement**

American also attempts to enforce a confidentiality agreement signed by Villareal. According to American, Villareal was provided with access to patient information and "the status and terms of American's contract with the Christus Spohn hospital system." American also contends that Villareal attended staff meetings during which he learned internal information such as performance data and "the pay mix of each facility's commercial to noncommercial cases in Corpus Christi." American further argues that Villareal was involved in two negotiations with potential client facilities and learned of

American's pricing model. In contrast, Villareal contends that he was not provided with any confidential information, and even if he were, he did not share any such information and thus did not violate the confidentiality agreement.

The confidentiality agreement defined "confidential information" as:

information in any form not generally known to the public disclosed to or acquired by the Employee/Independent Contractor/PRN directly or indirectly from the Employer/Contractor or any clients business partners or affiliates of the Employer/Contractor during the term of the Employee/Independent Contractor/PRN's employment/contract with the Employer/Contractor, including, without limitation but shall not include any information which was known to the Employee/Independent Contractor/ PRN prior to the date of the Employee/Independent Contractor/ PRN's employment with the Employer/Contractor or which was publicly disclosed otherwise than by breach of this Agreement:

(i)     information relating to the research, developments, systems, operations, clients and business activities of the Employer/Contractor or its business partners or Affiliates;

(ii)    information received from any clients, business partners or Affiliates of the Employer/Contractor;

(iii)   information specifically designated by the Employer/ Contractor as confidential;

(iv)   information specifically designated by a client, business partner or Affiliate of the Employer/Contractor as confidential; and

(v)    information required to be maintained in confidence by the Employer/Contractor pursuant to an agreement with a client, business partner, associate or other person[.]

The trial court found that there was no consideration for the confidentiality provisions of the employment agreement or for the confidentiality agreement itself and that American did not provide Villareal with confidential, proprietary, or trade secret information.

A promise to provide confidential information is illusory and cannot be the basis of an "otherwise enforceable agreement" unless (1) the employer promises to deliver the confidential information to the employee and (2) the employer actually delivers the confidential information at or near the time the employee makes the promise to keep the information confidential. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 297 (Tex. App.—Beaumont 2004, no pet.) (finding that employer's promise to provide confidential information was not illusory where, subsequent to signing the agreement, the employer made confidential information available to the employee on a daily basis); *see TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 38 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Here, the information that American contends was confidential was regularly received by Villareal throughout his course of employment. However, the trial court heard testimony that much of the information was ascertainable through sources outside of American. Villareal testified that "information that would allow other assistants to know what hospitals were surgical assistant friendly, and what hospitals you could potentially get work or work for a group" was readily available online through "open resource" documents that were "surgical assistant friendly." Villareal also explained that he was not privy to information such as contracts between American and the hospitals or the payment information used by American, but that he is aware that American, like all surgical assistant groups, goes through insurance for payment. Further, as it relates to patient information, the information is protected by the Health Insurance Portability and Accountability Act (HIPAA) and no confidentiality provision through his employment with American was necessary to protect such information. Accordingly, the trial court had evidence before it from which it could have determined that the information received by

11

Villareal during the course of his employment was not considered confidential. *See Edwards v. Pena*, 38 S.W.3d 191, 199 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.).

We overrule American's first through fourth issues.

### III.    ATTORNEY'S FEES

In its fifth, sixth, and seventh issues, American contends that the trial court erred in awarding attorney's fees to Villareal. Section 15.51(c) of the Act states:

> If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

TEX. BUS. & COM. CODE ANN. § 15.51(c). Because the statute provides that "the court may award" attorney's fees, the award of attorney's fees is within the trial court's discretion and is not mandatory. *Spring v. Walthall, Sachse & Pipes, Inc.*, No. 04–09–00474–CV, 2010 WL 2102988, at *11 (Tex. App.—San Antonio May 26, 2010, no pet.) (mem. op.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (holding that statutes providing that court "may award" are permissive and require abuse of discretion to overturn order granting or denying award)). As a predicate to an award of attorney fees under § 15.51(c), a plaintiff must prove that (1) defendant knew at the time the employment agreement was executed that the covenant did not contain limitations on time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a

12

greater restraint than necessary to protect defendant's goodwill or other business interest, and (2) defendant sought to enforce the covenant to a greater extent than was necessary to protect its goodwill or other business interest. *Sentinel Integrity Sols., Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 924–25 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also Jackson v. Ali Zaher Enters., LLC*, No. 05-18-00288-CV, 2019 WL 698019, at *2 (Tex. App.—Dallas Feb. 20, 2019, no pet.) (mem. op.); *Spring*, 2010 WL 2102988, at *11.

The trial court found

> [American] knew at the time of the November 2016 renewal of [the employment agreement] that the contractual restrictive covenants did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect any goodwill or other business interest, and sought to enforce the contractual restrictive covenants to a greater extent than was necessary to protect its goodwill or other business interest, if any.

American argues first that Villareal cannot recover attorney's fees related to American's request for reformation and enforcement of the restrictive covenants in the confidentiality agreement because it is not a contract for personal services. However, the trial court found that "the primary purpose of the agreements to which the contractual restrictive covenants are ancillary is to obligate the promisor to render personal services." Aside from the mere assertion that the confidentiality agreement is not for personal services, American provides no additional argument on this point. We conclude the issue has been inadequately briefed. *See* TEX. R. APP. P. 38.1(i). In any event, the confidentiality agreement is part of the employment agreement, which is indisputably for the rendering of personal services.

Next, American contends that there "is no evidence of the two requisites for an award of attorney's fees to Villareal under Section 15.51(c)." The first element Villareal

13

was required to prove to recover attorney's fees was that American knew at the time of the covenant's execution that its restrictions were unreasonable and imposed a greater restraint than was necessary. *See Sentinel*, 414 S.W.3d at 924. Villareal's argument is that American knew at the time that the agreement with Villareal was annually renewed, based on its previous recent lawsuit, that the restrictions were unreasonable and imposed a greater restraint than was necessary.

The employment agreement renewed annually on November 30, beginning in 2009, with the last renewal on November 30, 2017, ending with Villareal's resignation in October 2018. The trial court heard testimony, including an affidavit from Villareal's attorney, and took judicial notice of a recent prior lawsuit regarding the enforcement of American's restrictive covenants on a previous employee of American. In *American Surgical Assistants, Inc. d/b/a American Surgical Professionals v. Juan "Johnny" De Dios Villegas, et al.*, the trial court in the underlying cause entered a take nothing judgment against American and found that

> enforcement of the covenant not to compete in Corpus Christi would harm the public interest in the Corpus Christi market by resulting in a reduction in the quality of health care and continuity of care by depriving surgeons of their choice of surgical assistants, which has the effect of depriving the public access to surgeons with surgical assistants of superior knowledge and skills related to and inherent to their relationships to these surgeons and procedures performed.[1]

The trial court in the *Villegas* matter entered final judgment on February 19, 2016. Subsequently, Villareal's employment agreement renewed twice, with no changes to the

---

[1] The trial court in the underlying matter in the case at bar took judicial notice of the findings of fact and conclusions of law of the trial court in *American Surgical Assistants, Inc. d/b/a American Surgical Professionals v. Juan "Johnny" De Dios Villegas, et al.*, cause number 2014-DCV-5282-E, heard in the 148th Judicial District of Nueces County, Texas. The findings of fact and conclusions of law in that matter are part of the record in the case at bar.

covenant not to compete. American does not dispute that the trial court in the *Villegas* matter previously found the covenants to be unenforceable, but rather argues that Villareal failed to prove that American had knowledge of such unenforceability at the time the employment agreement was first executed in 2009.

We disagree that Villareal was required to show American's knowledge of enforceability in 2009. The employment agreement states that the agreement

> will begin on November 30, 2009[,] for an initial period of one year unless either party notifies the other of his/her intent to terminate the Agreement, in writing, with a fifteen days advance notice. . . . This Agreement shall be renewed for equal an [sic] period unless either party notifies the other of his/her intent to terminate the Agreement, in writing, with a fifteen days advance notice.

Renewal is defined as "the re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." *Renewal*, BLACK'S LAW DICTIONARY (11th ed. 2019). Each renewal of the agreement between American and Villareal constituted a new contract. *See id*. As such, each time the agreement was renewed after the *Villegas* ruling, American had the knowledge that the restrictive covenants contained therein were "unreasonable and imposed a greater restraint than was necessary." *See Sentinel*, 414 S.W.3d at 924. We conclude this is sufficient to satisfy the first prong under § 15.51(c).

As to the second prong required under § 15.51(c), American states that Villareal did not meet his burden in proving that American sought to enforce the covenant to "a greater extent than was necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN. § 15.51(c). As with the first prong, Villareal presented evidence to the trial court that American sought to enforce the same covenant in a prior proceeding, and it was determined by the trial court in *Villegas* that the goodwill

15

American sought to protect was goodwill between the surgeon and the surgical assistant and did not inure to the benefit of American. *Villegas*, 2017 WL 1284780, at *1. American was aware that the covenant not to compete contained in Villareal's employment agreement was unenforceable as written, yet American did not change the covenant going forward and instead further sought to enforce it against Villareal. Accordingly, Villareal met his burden under § 15.51(c) to show that American attempted to enforce the covenant to a greater extent than necessary to protect any goodwill it believed it had.

American's fifth, sixth, and seventh issues are overruled.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Delivered and filed the
8th day of October, 2020.